Filed 2/5/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

FRANCISCO MARENCO,

     Plaintiff and Appellant,

     v.

DIRECTV LLC.,

     Defendant and Respondent.

B238421

(Los Angeles County
Super. Ct. No. BC434357)

---

APPEAL from a judgment (order) of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge. Affirmed.

Karasik Law Firm and Gregory N. Karasik for Plaintiff and Appellant.

O'Melveny & Myers, Apalla U. Chopra, Beata L. Ng, and Adam Karr for Defendant and Respondent.

_____

In this putative class action, plaintiff Francisco Marenco contends that defendant DirecTV LLC violated state wage and unfair competition laws. (Lab. Code, § 212; Bus. & Prof. Code, § 17200 (UCL).) DirecTV moved to compel arbitration as the successor to an arbitration agreement between Marenco and his previous employer, 180 Connect, Inc., which was acquired by DirecTV. The trial court granted the motion over Marenco's objections that DirecTV is not a signatory to the agreement, and that the agreement's class action waiver is unconscionable under state law.

In this appeal from the judgment (order) staying the class claims and compelling arbitration of the individual claims, we conclude that DirecTV has standing to enforce the agreement, that the agreement's class action waiver is enforceable under *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. \_\_\_, 131 S.Ct. 1740 (*Concepcion*), and that the California Supreme Court's recent decision in *Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which was issued while this appeal was pending, is controlling.

## FACTUAL AND PROCEDURAL BACKGROUND

Before it was acquired by DirecTV, 180 Connect entered into an employment arbitration agreement with Marenco. The agreement required both parties to submit all claims arising from and related to the employment relationship to binding arbitration.[1]

---

[1] The arbitration agreement included the following provisions:

"In consideration of the Employee's employment with 180 Connect (and/or any of its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee and 180 Connect agree that, except as otherwise provided in this Agreement, any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment, and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration."

"Except as it otherwise provides, this Agreement requires all such disputes that have not otherwise been resolved to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability or validity of the Agreement or any portion of

2

The agreement prohibited filing a class or collective action, or a representative or private attorney general action[2] on behalf of a class of persons or the general public.

After acquiring 180 Connect, DirecTV retained 180 Connect's employees, including Marenco. Marenco continued working for DirecTV until February 2010.

In 2012, Marenco filed the present action against DirecTV. In the operative pleading, the first amended complaint, he alleged that DirecTV had issued "ADP

the Agreement. Issues arising out of or related to the enforceability or validity of this Agreement are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. The Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims (excluding workers compensation, state disability insurance, unemployment insurance claims, and claims for benefits from a 180 Connect-sponsored 'employee benefit plan,' as that term is defined in 29 U.S.C. § 1002(3)). . . ."

"In arbitration, the parties will have the right to conduct civil discovery and bring motions, as provided by the forum State's procedural rules. *However, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a representative or private attorney general capacity on behalf of a class of persons or the general public.*" (Italics added.)

"Each party will pay the fees for his, her, or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, 180 Connect will pay the arbitrator's and arbitration fees. If under applicable law 180 Connect is not required to pay all of the arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties by the arbitrator in accordance with said applicable law."

"An Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement. . . . An Employee choosing to opt out will not be subject to any adverse employment action as a consequence of that decision."

"The parties acknowledge that this Agreement shall not alter the at-will nature of their employment relationship. This Agreement is the full and complete Agreement relating to the formal resolution of employment-related disputes. Nothing contained in this Agreement shall be construed to prevent or excuse an Employee from utilizing 180 Connect's existing internal procedures for resolution of complaints."

[2] Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).

3

TotalPay debit cards" (debit cards) in payment of wages to the putative class of employee plaintiffs. Plaintiffs who used their debit cards to withdraw cash at ATM machines were required to pay an activation fee of either $.50 or $3.50, and a cash withdrawal fee. These fees resulted in DirecTV's failure to pay plaintiffs' full wages in violation of the UCL and Labor Code section 212—which requires that instruments issued for payment of wages must be negotiable and payable in cash, on demand, and without discount. The complaint, which did not include a representative PAGA claim for civil penalties, requested statutory damages, penalty wages, restitution, prejudgment interest, costs, and attorney fees on behalf of the putative class.

As successor to 180 Connect's rights and obligations under the arbitration agreement, DirecTV moved to compel arbitration of Marenco's individual claims, and stay the class claims. In support of this motion, DirecTV submitted the declaration of its assistant secretary Janet Williamson. She attested that during the acquisition of 180 Connect, DirecTV had assumed all of 180 Connect's assets, debts, rights, responsibilities, liabilities and obligations, including "all the rights and obligations arising from 180 Connect, Inc.'s employee relationships."

In opposition to the motion to compel, Marenco argued that as a nonsignatory, DirecTV lacked standing to enforce the arbitration agreement. He also argued that the agreement's waiver of the employee's right to bring class claims and representative PAGA claims was unconscionable and unenforceable under California law.

After initially granting DirecTV's motion to compel, the trial court granted Marenco's request for a rehearing. Before the rehearing date, the United States Supreme Court issued its decision in *Concepcion*, *supra*, 131 S.Ct. 1740, which held that the Federal Arbitration Act (FAA) preempts the California rule of unconscionability set forth in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 (*Discover Bank*). (*Concepcion*, *supra*, 131 S.Ct. at p. 1748.)

On rehearing the motion to compel, the trial court ordered arbitration of Marenco's individual claims. The court found that: (1) as successor to 180 Connect's rights and obligations, DirecTV had standing to enforce the arbitration agreement; (2) the

4

agreement's class action waiver is not unconscionable under state law because, according to *Concepcion*, the FAA preempts the *Discover Bank* rule of unconscionability; and (3) the agreement's prohibition of PAGA representative actions does not violate the National Labor Relations Act (NLRA) (29 U.S.C. § 157). This appeal followed.

## DISCUSSION

### I

As a preliminary matter, we must decide whether the trial court's order granting DirecTV's motion to stay the class claims and compel arbitration of Marenco's individual claims is appealable. Because the issue is jurisdictional (*Koshak v. Malek* (2011) 200 Cal.App.4th 1540, 1544), we raised it on our own motion and invited the parties to present further briefing and be prepared to argue the point at oral argument.

Although an order denying a motion to compel arbitration is appealable, an order granting a motion to compel arbitration generally is not. (Code Civ. Proc., § 1294, subd. (a); *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1122–1123.) Recognizing this, Marenco invoked the so-called "death knell" doctrine in his notice of appeal, citing *In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 757 (*Baycol*). Marenco also cited the death knell doctrine in his opening brief, and no challenge to the doctrine's application was raised by DirecTV in its respondent's brief.

The death knell doctrine applies where an order effectively terminates class claims and preserves only the plaintiff's individual claims. As the Supreme Court explained in *Baycol*, the doctrine applies where the order "amounts to a de facto final judgment for absent plaintiffs, under circumstances where . . . the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered . . . ." (*Baycol, supra*, 51 Cal.4th at p. 759.) The doctrine addresses the concern that a single plaintiff may lack incentive to pursue his or her individual claims to judgment, thereby foreclosing review of class issues. (*Id.* at p. 758.) This case fits within that description because there is little incentive for a single plaintiff, such as Marenco, to pursue de minimis individual claims for reimbursement of ATM cash withdrawal fees

5

and debit card activation fees ranging from $.50 to $3.50. Marenco states that his potential recovery—a $3.00 debit card activation fee and $5,510 in penalty wages—is too small to pursue on an individual basis.

However, this case does not fall within the death knell doctrine's procedural requirements as discussed in *Sandquist v. Lebo Automotive*, *Inc.* (2014) 228 Cal.App.4th 65, 72–75. According to *Sandquist*, the doctrine applies only if there is a final order dismissing the class claims with prejudice. In this case, our record does not indicate the status of the class claims, which were not mentioned in the order granting the motion to compel arbitration; presumably, they were stayed. (See Code Civ. Proc., § 1281.4 [action must be stayed pending completion of court-ordered arbitration].) At oral argument, we were informed that the class claims have not been dismissed. In contrast with its respondent's brief, DirecTV argued at the hearing that under *Sandquist*, the death knell doctrine does not apply, and the order compelling arbitration is not appealable.

Assuming the order is not appealable, we exercise our discretion to treat the appeal as a petition for a writ of mandate. (See *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098.) This is appropriate because the question of DirecTV's standing as a successor in interest, which both parties have extensively briefed, is an issue of first impression that will otherwise evade appellate review. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401.)

## II

Code of Civil Procedure section 1281.2 allows a party to an arbitration agreement to petition to compel arbitration. By stating that a party to an arbitration agreement may petition to compel arbitration, the statute assumes that a proceeding to compel arbitration will be between the signatories to the agreement. (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614, fn. 6.)

Marenco argues that as a nonsignatory, DirecTV lacks standing to enforce the arbitration agreement. He relies on the rule that "[b]ecause arbitration is a matter of contract, generally "'one must be a party to an arbitration agreement to be bound by it or invoke it.'" (*Molecular Analytical* [*Systems v. Ciphergen Biosystems LLC* (2010)] 186

6

Cal.App.4th [696], 706 . . . .)" (*DMS Services, Inc.* (2012) 205 Cal.App.4th 1346, 1352.) Marenco contends that he never agreed to arbitrate any disputes with DirecTV. (See *Rodriguez v. Superior Court* (2009) 176 Cal.App.4th 1461, 1468 [in order for an arbitration agreement to be valid, there must be mutual consent of the parties].)

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability. [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*U.S.*), *LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).) Where, as here, there are no disputed issues of fact, we determine whether a nonsignatory may enforce an arbitration agreement under the de novo standard of review. (See *Daniels v. Sunrise Senior Living, Inc*. (2013) 212 Cal.App.4th 674, 680 [whether an arbitration agreement is binding on a nonsignatory is a question of law subject to de novo review].)

Nonsignatory defendants may enforce arbitration agreements "where there is sufficient identity of parties." (*Valley Casework*, *Inc. v. Comfort Construction*, *Inc.* (1999) 76 Cal.App.4th 1013, 1021.) Enforcement is permitted where the nonsignatory is the agent for a party to the arbitration agreement (*id.* at p. 1021, citing *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418), or the nonsignatory is a third party beneficiary of the agreement (*Valley Casework*, *supra*, 76 Cal.App.4th at pp. 1021–1022). In addition, a nonsignatory may enforce an arbitration agreement under the doctrine of equitable estoppel. The doctrine applies where, for example, a signatory plaintiff sues a nonsignatory defendant for claims that are based on an underlying contract. In such instance, the plaintiff may be equitably estopped to deny the nonsignatory defendant's right to enforce an arbitration clause that is contained within the contract that the plaintiff has placed at issue. (See *Molecular Analytical Systems v. Ciphergen Biosystems*, *Inc.*, *supra*, 186 Cal.App.4th at p. 706.)

In this case, we must decide whether a nonsignatory defendant may enforce an arbitration agreement between a signatory plaintiff and a corporation that was acquired

7

by the nonsignatory defendant, which assumed all of the rights and obligations of the acquired corporation.  We have found no California cases on this point.

The arbitration agreement stated that issues related to the enforceability or validity of the agreement would be governed by the FAA.  One of the cardinal principles of arbitration, whether under the FAA or California law, is that "arbitration . . . 'is a matter of consent, not coercion.'  [Citation.]  Thus, '"a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."'  [Citations.]"  (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.)

Under the FAA, state contract law applies in order to "'determine whether the parties have entered a binding agreement to arbitrate.'  [Citations.]  Generally, an arbitration agreement must be memorialized in writing.  [Citation.]  A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement.  A signed agreement is not necessary, however, and a party's acceptance may be implied in fact (e.g., *Craig* [*v. Brown & Root*, *Inc.* (2000) 84 Cal.App.4th 416,] at p. 420 [employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer]) or be effectuated by delegated consent [citation].  An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.  (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215.)"  (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.)

In *Craig v. Brown & Root*, *Inc.*, *supra*, 84 Cal.App.4th 416, an employee (Craig) sued her employer for wrongful termination; the employer petitioned to compel arbitration; and the petition was granted.  In her appeal from the order confirming the arbitration award, Craig challenged the sufficiency of the evidence to prove the existence of an arbitration agreement.  The evidence showed that on the one hand, the employer's documents setting forth its dispute resolution procedure and binding arbitration requirement had been mailed to Craig's home address and had not been returned.  On the other hand, Craig provided an "equivocal denial of receipt."  (84 Cal.App.4th at p. 421.)  The trial court's finding that Craig had received the documents was deemed binding on appeal.  (*Ibid.*)  Based on Craig's continued employment after receiving those documents,

8

the appellate court found there was a binding agreement to arbitrate: "General principles of contract law determine whether the parties have entered a binding agreement to arbitrate. (*Chan v. Drexel Burnham Lambert, Inc*. (1986) 178 Cal.App.3d 632, 640–641.) This means that a party's acceptance of an agreement to arbitrate may be express (e.g., *Mago v. Shearson Lehman Hutton Inc*. (9th Cir. 1992) 956 F.2d 932 [agreement to arbitrate included in job application]; *Nghiem v. NEC Electronic, Inc*. (9th Cir. 1994) 25 F.3d 1437 [agreement to arbitrate included in handbook executed by employee]; *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105 [employer may terminate employee who refuses to sign agreement to arbitrate]) or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer (*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 11 [implied acceptance of changed rules regarding job security]; *DiGiacinto v. Ameriko-Omserv Corp.* (1997) 59 Cal.App.4th 629, 635 [implied acceptance of changed compensation rules])." (*Craig v. Brown & Root, Inc.*, *supra*, 84 Cal.App.4th at pp. 420–421.)

DirecTV relied on the Williamson declaration to establish that as a result of its acquisition of 180 Connect, it retained 180 Connect's employees and assumed all of the rights and obligations arising from its employment relationships, including the arbitration agreement between 180 Connect and Marenco. In response to our inquiry whether that declaration was sufficient to establish the existence of a merger under Corporations Code section 1107, subdivision (a),[3] Marenco argued the declaration was not sufficient. He stated that "[a]t most, the Williamson declaration asserts only that DIRECTV 'purchased'

---

[3] "Upon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, without other transfer, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them." (Corp. Code, § 1107, subd. (a).)

9

180 Connect and 'assumed' its rights and liabilities. The Williamson declaration does not remotely establish that 180 Connect ceased to exist or was 'dead.'"[4]

In response, DirecTV argued that the requirements of a Corporations Code section 1107 merger were met in this case: 180 Connect—the disappearing corporation—no longer exists; and DirecTV—the surviving corporation—succeeded to all rights and liabilities of the disappearing corporation. (See *Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 Cal.App.4th 1001, 1016; *McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753–754 [when one corporation is acquired by another, the purchasing corporation will become liable for the debts and liabilities of the acquired corporation if it expressly or impliedly agrees to such assumption]; Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2014) ¶ 8:191, pp. 8-59 (rev. #1 2014)) [on effective date of merger, disappearing corporation ceases to exist and is absorbed by surviving corporation, which inherits by operation of law all of its business, assets, rights and liabilities].)

By suing DirecTV for unpaid wages, Marenco acknowledged the existence of an employment relationship with the entity that survived the merger. DirecTV, the surviving corporation, assumed all of the disappearing corporation's rights and liabilities, including the obligations owed to the disappearing corporation's employees. Although DirecTV was not a signatory to the employment arbitration agreement between Marenco and 180 Connect, there is no doubt that the agreement formed one of the terms of Marenco's employment. When Marenco sued DirecTV for violating the terms of his employment, DirecTV was entitled to invoke the arbitration clause to compel Marenco, as a signatory plaintiff, to arbitrate his claims pursuant to the employment agreement. As the court stated in *Boucher v. Alliance Title Company*, *Inc.* (2005) 127 Cal.App.4th 262, 271–272: "[U]nder both federal and California decisional authority, a nonsignatory

---

[4] In his supplemental letter brief, Marenco raised evidentiary objections to the Williamson declaration (lack of personal knowledge, lack of foundation, hearsay, best evidence rule) that were not mentioned in the opening or reply briefs. We deem these objections to have been waived. (See *Stoll v. Shuff* (1994) 22 Cal.App.4th 22, 25, fn. 1.)

10

defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations. [Citations.] By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement. [Citations.]"

We would reach the same conclusion regardless of whether 180 Connect disappeared on the date of the merger. The evidence is undisputed that DirecTV acquired all of 180 Connect's assets, employees, rights, and liabilities. There is no indication that the original terms of Marenco's employment were modified, superseded, revoked, canceled, or nullified in any manner. The record thus supports a reasonable inference that the 180 Connect employees who continued working after the merger implicitly accepted DirecTV's decision to maintain their existing terms of employment, including the arbitration agreement. (See *Pinnacle*, *supra*, 55 Cal.4th at pp. 236–246 [continued employment constitutes acceptance of arbitration agreement proposed by successor employer].) Marenco offers no persuasive authority to refute the general contract law principle that his continued employment provided implied consent to maintaining the existing terms of employment, including the arbitration agreement. (See *Boucher v. Alliance Title Company*, *Inc.*, *supra*, 127 Cal.App.4th at pp. 271–272.)

Marenco does not argue that the arbitration agreement was modified or rescinded, but simply argues that because DirecTV did not sign the agreement, it lacks standing to enforce it. Under these circumstances, the fact that Marenco did not sign a new arbitration agreement with DirecTV is not a sufficient basis to invalidate his original agreement that constituted one of the established terms of his employment and was never extinguished, rescinded, altered, or revised. Based on the record and arguments presented to us, Marenco's continued employment with DirecTV served as his implied consent to preserving the original terms of employment, including the arbitration agreement. Our determination is consistent with the established principle that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the

11

obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." (Civ. Code, § 1589; *El Escorial Owners' Assn. v. DLC Plastering*, *Inc.* (2007) 154 Cal.App.4th 1337, 1360; see *Prograph International, Inc. v. Barhydt* (N.D.Cal. 1996) 928 F.Supp. 983, 991 [nonsignatory successors and alleged alter egos may enforce arbitration agreements signed by the corporations whose liabilities they have assumed].)

## III

Shortly before DirecTV's motion to compel arbitration was granted, the United States Supreme Court issued the *Concepcion* decision (131 S.Ct. 1740), which overruled the *Discover Bank* rule of unconscionability regarding class arbitration waivers in consumer contracts. Because *Concepcion* did not address *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), which found certain class action waivers in employment arbitration agreements to be unenforceable, Marenco urged the trial court to invalidate the agreement's class action waiver under *Gentry*. The trial court, however, upheld the class action waiver and this appeal followed.

While this appeal was pending, the California Supreme Court issued the *Iskanian* decision. Based on *Concepcion*, the court concluded that *Gentry's* rule—that certain class action waivers in employment arbitration agreements are invalid under state law—is preempted by the FAA. (*Iskanian*, *supra*, 59 Cal.4th at p. 366.) Marenco's argument on appeal—that the agreement's class action waiver is unenforceable under *Gentry*—was rejected by *Iskanian*, which is binding on this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## IV

Marenco contends the trial court erred in finding the arbitration agreement's PAGA waiver does not violate the NLRA. Since the complaint does not indicate that Marenco seeks to bring a representative PAGA claim, that issue is not before us for review. We note, however, that while the appeal was pending, the California Supreme Court held that PAGA waivers are contrary to public policy and unenforceable as a

12

matter of state law. (*Iskanian*, *supra*, 59 Cal.4th at pp. 383–384.)[5] The Supreme Court also held that the NLRA does not prohibit class action waivers in employment arbitration agreements. (*Iskanian*, *supra*, 59 Cal.4th at p. 372, citing *D.R. Horton*, *Inc. v. NLRB* (5th Cir. 2013) 737 F.3d 344.)

## DISPOSITION

The judgment (order) staying the class claims and compelling arbitration of Marenco's individual claims is affirmed. DirecTV is awarded its costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>

EPSTEIN, P. J.

We concur:

WILLHITE, J.

MANELLA, J.

---

[5] We recognize that of the federal district courts to pass on this issue in this state the majority have found PAGA waivers to be enforceable under the FAA and *Concepcion*. (*Ortiz v. Hobby Lobby Stores*, *Inc.* (E.D. Cal. 2014) ___ F.Supp.3d ___, ___ [listing unpublished district court cases in which PAGA waivers were found to be enforceable].) However, decisions of lower federal courts interpreting federal law, although persuasive, are not binding on state courts. (*Godfrey v. Oakland Port Services Corp.* (2014) 230 Cal.App.4th 1267, 1277, fn.10.) Until the United States Supreme Court resolves this issue, we are bound under the doctrine of stare decisis to follow the California Supreme Court's decision in *Iskanian* that PAGA waivers are invalid under state law. (*Auto Equity Sales*, *Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455; see 9 Witkin, Cal. Proc. (5th ed. 2008) Appeal, § 492, p. 551.)