Filed 7/1/21  White v. Overland Terrace Healthcare Centre CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MALISSA WHITE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OVERLAND TERRACE HEALTHCARE CENTRE, LP,<br><br>    Defendant and Appellant. | B306619<br><br>(Los Angeles County Super. Ct. No. 19STCV35955) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

De Castro Law Group, José-Manuel A. de Castro and Lori V. Minassian for Defendant and Appellant.

The Ryan Law Group and Andrew T. Ryan for Plaintiff and

Respondent.

* * * * * *

A former employee sued her employer for whistleblower and related claims. The employer petitioned the trial court to compel the former employee to arbitrate her claims, but the arbitration agreement she signed did not identify the employer as a party to the agreement. The trial court denied the petition to compel arbitration after concluding that the employer did not meet its burden of establishing an agreement to arbitrate between the employer and the former employee. Because this was correct, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I.      Facts**

In March 2018, Malissa White (plaintiff) started working as a nurse at a nursing home facility called Country Villa South.

At the time she was hired, plaintiff signed an Agreement To Be Bound By Alternative Dispute Resolution Policy (the agreement) along with an Alternative Dispute Resolution Policy (the policy). The agreement and the policy purport to bind plaintiff and her "employer or any of its employees or officers" to arbitrate "any and all claims arising out of the employment relationship," but never name or identify the employer beyond calling it the "Company." In the signature block, the "Company" is identified as "Country Villa [redacted],"[1] and the signatory was the Director of Staff Development for Country Villa South.

During the ensuing 15 months that plaintiff worked at Country Villa South, she received paychecks either from

---

[1]      In the available copy of the agreement, there appears to be a word after "Villa," but it is blocked out by a square discoloration.

2

Overland Terrace Healthcare & Wellness Center, LP (Overland) or jointly from Overland *and* Rockport Administrative Services, LLC (Rockport). Rockport provided "certain professional and back-office services" for Overland.

About a year into her employment at Country Villa South, plaintiff encountered what she believed were fraudulent Medicare billing practices. She made a report to her supervisor, but resigned in May 2019 when the "stress" of being "in the middle of a Medicare fraud scheme" became "too much" for her.

## II.   Procedural Background

### A.   *Complaint*

On October 8, 2019, plaintiff sued Rockport for (1) constructive termination in violation of public policy, (2) intentional infliction of emotional distress, and (3) retaliation in violation of Health and Safety Code section 1278.5 as well as Labor Code section 1102.6.

On January 16, 2020, plaintiff added Overland as a defendant by substituting it for a fictitiously named defendant.

### B.   *Motions to compel arbitration*

#### 1.   *First motion to compel*

On November 13, 2019, Rockport filed a motion to compel arbitration of plaintiff's claims. Following full briefing and a hearing in February 2020, the trial court denied the motion. The court concluded that there was "no . . . contractual agreement to arbitrate" between plaintiff *and Rockport* because the agreement was signed by plaintiff *and Country Villa South*, and because Rockport produced no "evidence of the connection between Rockport and Country Villa South."

#### 2.   *Second motion to compel*

On April 28, 2020, Overland filed a motion to compel

arbitration of plaintiff's claims.  Following another full round of briefing, the trial court also denied that motion.  The court concluded that the second motion to compel suffered from "the same fundamental problem" as the first motion—namely, that there was only evidence of an arbitration agreement between plaintiff *and Country Villa South*, and no evidence connecting Overland with Country Villa South, which, as far as the court could tell, was merely "a location" and not "any type of a legal entity."

**C.** *Appeal*

Overland timely appealed from the trial court's order.[2]

## DISCUSSION

Overland asserts that the trial court was wrong to deny its motion to compel arbitration of plaintiff's claims.  (Code Civ. Proc., § 1294, subd. (a) [authorizing immediate appeal from such order].)

## I.  Pertinent Law

Because arbitration is a "'matter of consent'" (*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 681; *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 232 ["matter of contract"]), a trial court may compel arbitration only if "it determines that an agreement to arbitrate the controversy exists."  (Code Civ. Proc., § 1281.2; *Long v.*

---

**2**    Rockport joined in the second motion to compel arbitration, and also appealed from the trial court's order denying that motion.  Plaintiff moved to dismiss Rockport's appeal on the ground that its joinder in the second motion to compel constituted an improper motion for reconsideration of the trial court's prior denial of Rockport's first motion to compel; Rockport did not oppose the motion.  We granted plaintiff's motion to dismiss Rockport's appeal.

4

*Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 861 [this is a ""threshold question""]; *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396 [same].)  The party moving to compel arbitration bears the burden of proving the existence of an arbitration agreement between the movant and the party to be compelled.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; *Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409, 1416 (*Marenco*); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 627 [court must "determine whether the parties agreed to arbitrate that dispute"].)  The identity of the parties is *critical* because state contract law governs the threshold issue of whether an agreement to arbitrate exists (*Pinnacle*, at p. 236), and a contract is valid under California law only if it names the parties.  (Civ. Code, § 1558.)  This is precisely why, as a general rule, only signatories to an arbitration agreement may invoke or be bound by that agreement.  (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1284 (*Rowe*); accord, *Marenco*, at p. 1416 [California Arbitration Act presumes that "proceeding to compel arbitration will be between the signatories to the agreement"].)

Where, as here, a trial court's finding that an arbitration agreement does not exist is based on disputed facts, we review that finding for substantial evidence.  (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357; *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406; *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 772.)  And where, as here, the substantial evidence challenge is brought by the party with the

5

burden of proof below, we may overturn factual findings only if "'the evidence compels a finding in favor of the appellant as a matter of law'" because the evidence "'was (1) "uncontradicted and unimpeached" and (2) "of such character and weight as to leave no room for judicial determination that it was insufficient to support [those] finding[s].""" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord *Agam v. Gavra* (2015) 236 Cal.App.4th 91, 108 (*Agam*).)

## II. Analysis

### A. *Overland failed to meet its burden*

Overland has not demonstrated that the evidence compels a finding that it entered into an agreement to arbitrate with plaintiff. To be sure, the undisputed evidence may well compel a finding that plaintiff had an employment relationship with Overland as well as a finding that plaintiff signed an employment agreement with "Country Villa [redacted]." But the evidence is far from overwhelming enough to compel a finding that the "Country Villa [redacted]" with whom plaintiff agreed to arbitrate disputes is the same entity as Overland.

At best, the evidence on this point is conflicting.

On the one hand, some evidence *might* support a finding that "Country Villa [redacted]" and Overland are one and the same. Overland's Licensed Nursing Home Administrator declared that Overland (1) does "business under the fictitious business name 'Country Villa South,'" and (2) "has maintained a registration of its use of this fictitious name on file with the County of Los Angeles." But the trial court excluded the first statement as lacking foundation, and the court's exclusion of the first statement binds us because Overland has not challenged that evidentiary ruling on appeal. (*Dina v. People ex rel. Dept. of*

6

*Transportation* (2007) 151 Cal.App.4th 1029, 1048 [failure to challenge leaves evidentiary ruling intact], disapproved on other grounds in *Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 845, fn. 18.) And, as described below, the second statement is incorrect. Also, the Department of Public Health's website shows that the *licensee* for "Country Villa South Convalescent Center" is Overland. Overland's status as licensee merely establishes that it is the entity responsible for that "licensed facility" (Cal. Code Regs., tit. 22, § 72501, subd. (a)) and must "employ an adequate number of qualified personnel to carry out all functions of the facility" (*id.* at subd. (e)). However, this status does not mean that *plaintiff* was one of those minimally required employees (rather than being employed by someone else and assigned to work at the County Villa South Convalescent Home by another employer), particularly given that she received some paychecks from Rockwell as a joint payor. What is more, the Department of Public Health listing for "Country Villa South Convalescent Home" also shows that the management company is "Country Villa Service Corp dba Country Villa Health Services," which further muddies the waters regarding *which* exact "Country Villa [redacted]" entity is the entity with whom she entered the agreement. At bottom, Overland's role as the licensee does not definitively establish that "Country Villa [redacted]" *is* Overland.

On the other hand, a substantial quantum of evidence supports a finding that "Country Villa [redacted]" and Overland are *not* one and the same. Contrary to what Overland's administrator declared, Overland did not register "Country Villa South" as a fictitious business name with the Los Angeles County Registrar-Recorder's office. Overland's failure to follow the basic

7

procedures necessary to operate under a fictitious business name means that Overland cannot "maintain any" lawsuits for breach of contracts entered into by Country Villa South (Bus. & Prof. Code, § 17918), a result that would leave Overland powerless to enforce breaches of contracts entered into between Country Villa South and its patients and suppliers. The trial court could reasonably infer that Overland would not rationally undertake such a risk and that, as a result, Overland is not actually the same entity as "Country Villa [redacted]." Nor can Overland be brought into the agreement as an entity somehow affiliated with "Country Villa [redacted]"; that is because the agreement, by its express terms, names "Country Villa [redacted]" as plaintiff's "employer"/the "Company" and expressly limits its application to the "employer or any of its employees or officers." This plain language controls. (Civ. Code, § 1639.)

Because the evidence in support of a finding that "Country Villa [redacted]" and Overland are synonymous is at best conflicting, the record does not *compel* that finding. (*Agam*, *supra*, 236 Cal.App.4th at p. 108 [appellant's evidence must be "uncontradicted"].)

B. ***Overland's counterarguments***

Overland resists our conclusion with several arguments that can be grouped into three different categories.[3]

---

[3] At oral argument, Overland argued that the trial court was required to rule in its favor because, at the hearing on the first motion to compel filed by Rockport, the court stated that Overland "apparently [has] a contract with" plaintiff, "but that's not where we are right now." However, a trial court is not bound by its preliminary statements regarding a motion that had yet to be filed based on evidence that had yet to be presented.

### 1. *Plaintiff did not carry her burden*

Overland asserts that it should prevail as a procedural matter because plaintiff never submitted a declaration opposing the motion to compel arbitration. This assertion lacks merit. As noted above, it is the moving party—here, Overland—who bears the initial "burden of proving the existence of an arbitration agreement"; it is only when that burden is met that the burden then shifts to the opponent to "prov[e] any defense, such as unconscionability." (*Pinnacle*, *supra*, 55 Cal.4th at p. 236.) Overland proclaims that it discharged its burden because it proved the existence of *an* arbitration agreement, but the initial burden is discharged only if the movant proves the existence of an arbitration agreement *between the movant and the person to be compelled to arbitration.* (Cf. *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219 [attaching copy of pertinent agreement sufficient].) Because, as noted above, substantial evidence supports the finding that Overland did not prove the existence of an arbitration agreement that *it* could enforce, the burden never shifted to plaintiff.

### 2. *Overland is a party to the agreement*

Overland offers four arguments in support of its position that it was a party to the agreement.

First, Overland boldly declares that there is "no disput[e]" that it was operating under the fictitious business name Country Villa South. To the contrary, this issue is hotly disputed and the evidence on this issue, as noted above, is also in conflict. Indeed, the Director of Staff Development for Country Villa South who signed the agreement for the "Company" did not even state in her declaration on Overland's motion to compel arbitration which entity employed her.

9

Second, Overland contends that plaintiff "knew full well" with whom she was agreeing to arbitrate her employment-related claims. This contention is doubly meritless. Overland offers no *evidence* to support its view as to what plaintiff subjectively "knew"; all it advances is speculation, and "speculation is not evidence"—let alone evidence of sufficient force to compel a finding in Overland's favor. (*Wise v. DLA Piper (US)* (2013) 220 Cal.App.4th 1180, 1188.) And even if Overland *did* have evidence to support its assertion, plaintiff's "uncommunicated subjective intent" or knowledge "is irrelevant" to the interpretation of the contract. (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579; *Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1587 ["[m]utual assent to contract is based upon objective and outward manifestations of the parties"].)

Third, Overland asserts that plaintiff's continued employment with knowledge of the agreement is sufficient to compel arbitration between plaintiff and Overland. Although an employee will be deemed to consent to arbitration with her employer if she continues working after being notified of an arbitration agreement between herself and the employer (*Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, 130; *Pinnacle*, *supra*, 55 Cal.4th at p. 236), this principle is irrelevant where, as here, the arbitration agreement is between the employee and some other entity not proven to be her employer.

Lastly, Overland argues that the allegations in plaintiff's complaint that Overland and Rockport are her "joint employers" constitutes a judicial admission that binds plaintiff to arbitrate her employment-related claims with Overland. Even if we assume this to be a valid judicial admission, it does not aid Overland because the agreement is between plaintiff *and*

10

*Country Villa [redacted]*, and plaintiff makes no allegations about the relationship between her "joint employers" and Country Villa [redacted].

   3. *Even as a nonsignatory to the agreement, Overland may still enforce the agreement*

  Overland offers two arguments in support of its position that it may still invoke the agreement even if it is not a signatory.

  First, Overland asserts that it may enforce the agreement because it was signed by Country Villa [redacted], and Country Villa South is its agent. To be sure, a nonsignatory to an arbitration agreement may enforce that agreement if it is acting as an agent of a signatory. (*Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 788; *Marenco, supra*, 233 Cal.App.4th at p. 1417.) But plaintiff has not alleged—and Overland has not introduced any evidence to support a finding—that Overland is now acting as Country Villa [redacted]'s agent. (Accord, *Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 304 ["Every California case finding nonsignatories to be bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory"].)

  Second, Overland contends that plaintiff is equitably estopped from contesting its motion to compel. To be sure, the doctrine of equitable estoppel may empower a nonsignatory to a contract containing an arbitration clause to invoke that clause against a signatory if the signatory sued the nonsignatory for claims "'dependent upon, or founded in and inextricably intertwined with'" that contract. (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1238; accord, *Rowe, supra*,

11

153 Cal.App.4th at pp. 1286-1287; *Boucher v. Alliance Title Co.* (2005) 127 Cal.App.4th 262, 271-272; *Marenco, supra,* 233 Cal.App.4th at p. 1417.)  But here, plaintiff's claims are not grounded in any contract; instead, they are based on statutory employment law and common law torts.  Because plaintiff is not "using the terms or obligations of [the] agreement as the basis for [her] claims . . . , while at the same time refusing to arbitrate . . . under another clause of that same agreement," equitable estoppel does not apply.  (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 221.)

*     *     *

Because we have concluded that Overland may not invoke the arbitration agreement *at all*, we have no occasion to consider plaintiff's rejoinder that arbitration is unwise because it might lead to inconsistent rulings under Code of Civil Procedure section 1281.2, subdivision (c).

## DISPOSITION

The order is affirmed.  Plaintiff is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

13