Filed 8/16/24  Silva v. True Organic Products CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JESUS SILVA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TRUE ORGANIC PRODUCTS, INC.,<br><br>    Defendant and Respondent. | H051482<br>(Monterey County<br>Super. Ct. No. 23CV000259) |

Jesus Silva filed a class action complaint against his former employer, True Organic Products, Inc. (True Organic), alleging violations of Labor Code provisions governing wages, hours, and reimbursement of business-related expenses and costs (Lab. Code, §§ 201, 202, 226, subd. (a), 226.7, 510, 512, subd. (a), 1194, 1197, 1198, 2800, 2802), and a violation of Business and Professions Code provisions governing unfair competition (Bus. & Prof. Code, § 17200 et seq.).  True Organic filed a petition to compel arbitration and stay proceedings (petition), citing arbitration agreements signed by Silva mandating arbitration of "any and all disputes."

The trial court issued an order granting the petition, dismissing without prejudice Silva's representative class claims for lack of standing, and staying the proceedings pending completion of the arbitration between the parties.  Silva appealed.

For the reasons stated below, we determine that the order is not appealable and dismiss Silva's appeal.

## I. FACTS AND PROCEDURAL BACKGROUND[1]

Silva was an hourly, non-exempt maintenance mechanic at True Organic, an organic fertilizer manufacturer, between November 2016 and August 2019.

On November 21, 2016, the parties signed an arbitration agreement when Silva was first hired. For reasons unexplained in the record, the parties signed a second arbitration agreement on March 1, 2018.[2] True Organic stated that it does not require employees to sign the arbitration agreement, and employees who do not sign the arbitration agreement are able to retain their employment with the company.

Section 1 of the arbitration agreement states, "Any disputes which cannot be resolved informally between the parties shall be submitted to final and binding arbitration in Fresno County, California. The parties expressly state that it is their intent to arbitrate any and all disputes between them, including, but not limited to, all disputes arising out of their employment relationship, the termination of that relationship, claims of discrimination, harassment, breach of contract, tortious conduct, statutory violations, unpaid wages, overtime, penalties or any injury to [e]mployee's physical, mental, or economic interests, excluding any workers' compensation claim. It is understood that the parties may each be represented by an attorney." Concomitantly, by signing the arbitration agreement, the parties waived their rights to a jury trial for any claim covered

---

[1] We take these facts from the parties' filings submitted in the trial court in connection with the petition.

[2] The parties do not dispute that the two arbitration agreements are substantively similar. Further references are to the second arbitration agreement (arbitration agreement).

2

by the agreement.[3]  Subject to applicable law, the arbitration agreement obligates True Organic to pay for the cost of arbitration.[4]

Section 6 of the arbitration agreement provides, in pertinent part, "Because the parties expressly state that it is their intent to arbitrate disputes between them, this [a]greement shall be construed so as to be consistent with applicable federal and California law, and shall be enforceable to the maximum extent allowable by law to provide arbitration as the forum to resolve any dispute between the parties."  Section 9 of the arbitration agreement states that the agreement is governed by California law.

On January 25, 2023, Silva filed a class action complaint alleging True Organic violated his rights, and those of similarly situated members of the public, under the Labor Code and violated the unfair competition provisions of the Business and Professions Code.  He defined the proposed class as "[a]ll current and former hourly-paid or non-exempt employees of [True Organic] within the State of California at any time during the period from four years preceding the filing of this [c]omplaint to final judgment."

True Organic petitioned the trial court to compel arbitration and stay the proceedings pursuant to the Federal Arbitration Act and Code of Civil Procedure sections 1281.2 and 1281.4.[5]

---

[3] Section 7 of the arbitration agreement states, "THE PARTIES AGREE THAT BY ENTERING INTO THIS AGREEMENT, THEY EACH KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHTS TO A TRIAL BY JURY FOR ANY CLAIM COVERED BY THIS AGREEMENT."  (Boldface omitted.)

[4] Section 3 of the arbitration agreement provides, "[True Organic] shall pay the arbitrator's fees and expenses unless applicable law allows the parties to share the arbitrator's fees and expenses, in which event [True Organic] and [Silva] shall each pay 50% of the arbitrator's fees and expenses.  Each party shall pay his, her, or its own attorneys' fees and costs, except that if applicable law allows the prevailing party to recover attorneys' fees, costs and expenses, the parties agree that the arbitrator may award the prevailing party reasonable attorneys' fees, costs, and expenses incurred in the arbitration."

[5] Unspecified statutory references are to the Code of Civil Procedure.

3

Silva opposed True Organic's motion to compel arbitration. Silva did not dispute the validity of the arbitration agreements, but, rather, argued that the California Arbitration Act, not the Federal Arbitration Act, should apply because (1) the governing law provisions of both arbitration agreements state California law shall govern, and (2) Silva's job responsibilities did not include production or transportation of True Organic's products and, thus, Silva did not personally engage in interstate commerce. Silva further asserted that, pursuant to the California Arbitration Act, the trial court should analyze the validity and applicability of the waiver provision in the arbitration agreement using the test set forth in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 and decline to enforce the purported "class waiver."

Following an unreported hearing, the trial court issued a written order granting True Organic's petition and directing the parties to arbitrate the individual claims in Silva's complaint in accordance with the terms of the arbitration agreement.[6] The order also dismissed without prejudice Silva's representative class claims on the basis that he lacked standing to maintain them and stayed the action pending the conclusion of the arbitration proceedings relating to Silva's individual claims.[7]

---

[6] On appeal, Silva criticizes the trial court for "refusing to provide a statement of decision." Silva asserts that his trial counsel requested a statement of decision during the hearing on the petition and the trial court refused on the grounds that "statement[s] of decision[] are not provided for law and motion calendar items." We are limited to the information set forth in the record, which does not include a reporter's transcript of the hearings, and the record does not demonstrate any such request from Silva's counsel. Moreover, section 1291 provides, "A statement of decision shall be made by the court, if requested pursuant to [s]ection 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title." As discussed *post*, the order compelling arbitration is not appealable and, thus, the trial court was not obligated under section 1291 to issue a statement of decision, even if Silva's trial counsel requested one.

[7] Although True Organic's proposed order originally stated that Silva's class claims were "dismissed *with* prejudice," the trial court issued the order after amending it to read "dismissed *without* prejudice." (Italics added.)

4

## II. DISCUSSION

On appeal, Silva reiterates the assertions made in his opposition to True Organic's petition. Although Silva acknowledges that orders compelling arbitration ordinarily are not immediately appealable, he contends that the trial court's order "amount[ed] to a de facto final judgment," triggering the "death knell" doctrine and rendering the order appealable.

True Organic counters that the Federal Arbitration Act is applicable to determining the arbitrability of Silva's claims because (1) Silva's job responsibilities as a maintenance mechanic "directly impacted production" and, thus, affected interstate commerce, and (2) it is the default rule regarding arbitrability of asserted claims, whereas substantive state law governs the manner and procedure by which an arbitrator evaluates the claims. True Organic's briefing does not address our jurisdiction.

Because the question is potentially dispositive of the appeal, we first address the appealability of the trial court's order.

### A. *Applicable Law*

"In most cases, appeal is only allowed from the final judgment." (*Aleman v. AirTouch Cellular* (2012) 209 Cal.App.4th 556, 585 (*Aleman*), citing § 904.1.) "The one final judgment rule is 'a fundamental principle of appellate practice.' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756 (*Baycol*).) " ' "The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." ' " (*Ibid*.) Adherence to the rule furthers judicial efficiency and clarity by providing " 'a more complete record' " for the reviewing court, thereby allowing it " 'to remedy error (if any) by giving specific directions rather than remanding for another round of open-ended proceedings.' " (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741, fn. 9.)

Although, "[u]pon an appeal pursuant to [s]ection 904.1 . . ., the reviewing court may review . . . any intermediate ruling," such jurisdiction is limited to those rulings that "involve[] the merits or necessarily affects the judgment or order appealed from or which substantially affect[] the rights of a party." (§ 906.) Orders "compelling arbitration cannot be said to involve the merits nor [do they] necessarily affect the order of dismissal of the action at law." (*Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1089 (*Muao*).)

An order compelling arbitration is not a final judgment, and, thus, generally, is not immediately appealable. (*Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 19.) "Section 1294 lists the orders and judgments that are appealable in judicial proceedings to enforce arbitration agreements. '[A]n order directing arbitration, not being one of those orders listed in section 1294 . . ., is not appealable.' " (*Muao*, *supra*, 99 Cal.App.4th at p. 1088; *State Farm Fire & Casualty v. Hardin* (1989) 211 Cal.App.3d 501, 506 (*State Farm*).) " 'The rationale behind the rule making an order compelling arbitration nonappealable is that inasmuch as the order does not resolve all of the issues in controversy, to permit an appeal would delay and defeat the purposes of the arbitration statute.' " (*State Farm*, at p. 506; see also *Muao*, at p. 1089 [order compelling arbitration not reviewable because no judgment had been entered].) Instead, "[s]uch an order is reviewed on appeal from the judgment entered after the arbitration is completed or in exceptional circumstances . . . by writ of mandate." (*Muao*, at pp. 1088–1089.)

Moreover, an "order compelling arbitration is interlocutory in nature and works no hardship on the litigant because the party who objects to arbitration may win at the arbitration hearing, and if he does not, the issue is reviewable on appeal from the judgment of confirmation." (*State Farm*, *supra*, 211 Cal.App.3d at p. 506.)

In the class action context, the " 'death knell' " doctrine provides an exception to the one final judgment rule. (*Baycol*, *supra*, 51 Cal.4th at p. 754.) "Notwithstanding its colorful title, the 'death knell' doctrine is a tightly defined and narrow concept."

6

(*Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547 (*Farwell*).)

Under the death knell doctrine, "an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered" are appealable. (*Baycol*, *supra*, 51 Cal.4th at p. 759.) Thus, orders that terminate class claims in their entirety and preserve only the plaintiff's individual claims are appealable. (*Id.* at p. 757; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 (*Daar*); *Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409, 1415 (*Marenco*); *Aleman*, *supra*, 209 Cal.App.4th at p. 585.) By contrast, "orders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal," and, thus, are not immediately appealable. (*Baycol*, at p. 757; *Aleman*, at pp. 585–586 [concluding the death knell doctrine is not applicable if the remaining class plaintiffs retain their ability to pursue class certification].) Other orders "excluded from the death knell doctrine are orders certifying a class, orders partially certifying a class, orders compelling the representative of a class to arbitrate, and orders directing service of notice to class members." (*Farwell*, *supra*, 163 Cal.App.4th at pp. 1547–1548.)

Ultimately, "[w]hat matter[s is] not the form of the order or judgment but its impact." (*Baycol*, *supra*, 51 Cal.4th at p. 757.) We must evaluate "the total substance of the order." (*Daar*, *supra*, 67 Cal.2d at p. 699.)

B. *Analysis*

The trial court's order granted True Organic's petition and ordered the parties "to arbitrate the individual claims contained in [Silva]'s [c]omplaint according to the terms of the underlying arbitration agreement." The order further stated, "(1) [Silva] lacks standing to continue to maintain his representative class claims in court and those claims are, therefore, dismissed without prejudice; (2) this action is stayed pending the conclusion of the arbitration proceedings relating to [Silva]'s individual claims pursuant

7

to 9 U.S.C. § 3; and (3) an arbitration status conference is set for December 12, 2023 at 9 a.m., before this [c]ourt." The trial court declined to accept True Organic's proposed order dismissing the class claims with prejudice, revising the order to dismiss them without prejudice.

Although the trial court allowed Silva to continue to pursue his individual claims through arbitration and dismissed his representative class claims, it did not deny class certification or otherwise make a determination regarding the legal sufficiency of the complaint as a class action.[8] Rather, the court dismissed Silva's class claims due to his lack of standing to represent the proposed class, and did so without prejudice, preserving for the remaining class plaintiffs the opportunity to name a new class representative and pursue the class claims against True Organic.[9] (See *Williams v. U.S. Bancorp Investments, Inc.* (2020) 50 Cal.App.5th 111, 116–117 [determining order compelling arbitration entirely terminated class claims where plaintiff was the only named class representative and trial court dismissed the class claims *with* prejudice]; *Marenco*, *supra*, 233 Cal.App.4th at p. 1415 ["The [death knell] doctrine applies only if there is a final order dismissing the class claims with prejudice."]; *Aleman*, *supra*, 209 Cal.App.4th at p. 586 ["The death knell has not yet sounded. The remaining plaintiffs' ability to pursue class certification has not been terminated. Because the denial order was without prejudice, the remaining plaintiffs are free to move for class certification again."].)

The effect of the trial court's order aligns with established class action cases in which " 'California courts recognize and preserve the rights of absent class members.' " (*Pirjada v. Superior Court* (2011) 201 Cal.App.4th 1074, 1082.) For example, as

---

[8] As Silva acknowledged in his opposition to the petition, True Organic's petition did not seek to strike the class claims.

[9] "The term 'without prejudice,' in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought." (*Chambreau v. Coughlan* (1968) 263 Cal.App.2d 712, 718, citing *Wilkins v. Wilkins* (1950) 95 Cal.App.2d 611, 613.)

8

pertinent here, the inability of a named plaintiff to adequately represent the proposed class " 'cannot justify a dismissal of the [class] action without affording plaintiffs an opportunity to amend their pleading' " (*id*. at p. 1084; see also *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999) to add one or more new named plaintiffs as class representative, redefine the proposed class, " 'or both, in order to establish a suitable representative.' " (*Shapell Industries, Inc. v. Superior Court* (2005) 132 Cal.App.4th 1101, 1110 (*Shapell*); see also *Timlick v. National Enterprise Systems, Inc.* (2019) 35 Cal.App.5th 674, 689.)

In *Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, the court reviewed a trial court's order that compelled arbitration, dismissed the appellant's class and representative claims without prejudice, and stayed trial court proceedings pending completion of the arbitration of the appellant's individual claims. (*Id*. at p. 199.) The plaintiff in *Miranda* lacked standing because, pursuant to his arbitration agreement with his employer, he had "agreed to arbitrate all employment claims and waived the right to arbitrate claims as a class or collective action." (*Ibid*.) Although the court recognized that "a different plaintiff who ha[d] not signed the [arbitration agreement] could be substituted in as the representative plaintiff for th[e] claim[,] [] respondents submitted a declaration to the trial court stating '[a]ll personnel who commence or continue employment' are required to comply with the arbitration policy." (*Id*. at p. 202.) Since, based on the respondent's declaration, "no employees [] could assert the representative . . . claim," the court found that the fact that the trial court dismissed the claims without prejudice did not preclude the application of the death knell doctrine. (*Ibid*.)

Here, by contrast, True Organic's chief operating officer and vice president of human resources stated in their respective declarations that True Organic's employees are not required to sign the arbitration agreement and those who do not sign it remain employed by the company. Thus, unlike in *Miranda*, presumably there are current or other former True Organic employees who did not sign arbitration agreements who could

9

potentially assert the claims on behalf of the class in Silva's stead and preserve the class action.[10] (See *Shapell, supra*, 132 Cal.App.4th at p. 1108 [noting that, despite the dismissal of the representative plaintiff's claims, "the putative class remained extant, awaiting proper amendment of the complaint to add a new representative plaintiff"].) In dismissing the class claims without prejudice, the trial court left open the possibility that the class claims could continue with the substitution of a new, suitable class representative.

"We perceive no lapse in the trial court's jurisdiction to hear and determine the dispute at issue here, where thus far the trial court has not determined that the pleading fails to allege a sufficient class. The alleged putative class members are the parties interested in prosecuting the action, such that an actual, justiciable controversy exists, pending amendment to add a named representative plaintiff." (*Shapell, supra*, 132 Cal.App.4th at p. 1111.) We conclude the trial court's order is not appealable.

Although we have the discretion to treat an appeal from a nonappealable order compelling arbitration as a petition for a writ, we decline to do so here. " '[W]rit review of orders directing parties to arbitrate is available only in "unusual circumstances" or in "exceptional situations." ' " (*Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 636.) For example, such review may be appropriate " '(1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement or (2) if the arbitration would appear to be unduly time consuming or expensive.' " (*Ibid*.)

The matters ordered arbitrated here clearly fall within the broad scope of the arbitration agreement, which covers "any and all disputes between [the parties], including, but not limited to, all disputes arising out of their employment relationship, . . . , claims of . . . statutory violations, unpaid wages, overtime, penalties or any injury to [Silva]'s physical, mental, or economic interests." Moreover, nothing in the

---

[10] Silva has pointed to nothing in the record that would support a contrary conclusion.

record suggests that arbitration would be unduly time consuming or expensive for Silva.[11] "Because an appellate court should exercise this jurisdiction only in unusual circumstances [citation], and because this case presents no unusual circumstances, we decline to treat the matter as a petition for writ of mandate." (*State Farm*, *supra*, 211 Cal.App.3d at p. 507.)

## III.  DISPOSITION

The appeal from the order compelling arbitration is dismissed.  In the interests of justice, the parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

---

[11] Under the arbitration rules specified in the arbitration agreement, True Organic pays "the arbitrator's fees and expenses unless applicable law allows the parties to share the arbitrator's fees and expenses."

_____
Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Bromberg, J.

**H051482**
*Silva v. True Organic Products, Inc.*