Filed 6/26/26  Rivera v. Flagship Facility Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MA AZUCENA VARGAS RIVERA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FLAGSHIP FACILITY SERVICES,<br>INC., et al.,<br><br>Defendants and Appellants. | H052759<br>(Santa Clara County<br>Super. Ct. No. 23CV421827) |

Plaintiff Ma Azucena Vargas Rivera filed a putative wage and hour class action against her former employer, defendant Flagship Facility Services, Inc., and three affiliated entities, defendants Flagship Enterprises Holding, Inc.; Flagship Sweeping Services, Inc.; and Flagship Airport Services, Inc.  Defendants moved to compel arbitration of plaintiff's individual claims, dismiss the class claims, and stay the action.  Defendants' motion was based on a dispute resolution agreement, which plaintiff signed during the new hire process.  The agreement required binding arbitration of employment related disputes and required the employee to waive the right to bring a class action.

The trial court denied the motion in its entirety.  The court determined that the dispute resolution agreement was unconscionable, that severance of the multiple problematic provisions was not appropriate, and that the entire agreement was therefore unenforceable.  Based on the unenforceability of the agreement, the court determined that

the class action waiver contained in the agreement could not be enforced, and consequently denied defendants' motion to dismiss the class claims.

On appeal, defendants contend that the trial court erred in denying their motion. They argue that the Federal Arbitration Act's (FAA; 9 U.S.C. § 1 et seq.) procedural provisions, in addition to its substantive provisions, apply to the parties' dispute resolution agreement; that the agreement was not unconscionable; and that, in any event, any problematic provisions should have been severed and the remainder of the agreement enforced.

For reasons that we will explain, we determine that a single confidentiality provision in the dispute resolution agreement is unconscionable, but that after severance of the provision the agreement is enforceable. Therefore, we will reverse the trial court's order denying defendants' motion and remand the matter with directions to (1) sever the dispute resolution agreement's confidentiality provision, and (2) grant defendants' motion to compel arbitration, dismiss the class claims, and stay the proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Dispute Resolution Agreement*

The dispute resolution agreement at issue in this case is a standalone four-page arbitration agreement. On the first page, at the top, there is a box with the following three sentences: "This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice." (Boldface omitted.) Underneath this statement, within the same box, is a translation of the three sentences in Spanish and in another language. The remainder of the agreement is in English.

The dispute resolution agreement states that it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce." The agreement provides for "final and binding arbitration" for "any legal dispute arising out of

2

or related to" an individual's employment with Flagship Enterprises Holding, Inc. or its affiliates.

Regarding the class action waiver, the dispute resolution agreement states, "Private attorney general representative actions are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law. However, you and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective action basis. Accordingly, [¶] . . . [t]here will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ('Class Action Waiver'). The Class Action Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction. [¶] . . . [¶] . . . Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver or Collective Action Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." (Boldface omitted.)

The dispute resolution agreement includes a confidentiality provision as follows: "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties."

Regarding discovery in arbitration, the dispute resolution agreement states, "In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. At a party's request or on the Arbitrator's own initiative, the Arbitrator may subpoena witnesses or documents for discovery purposes or for the arbitration hearing."

The dispute resolution agreement indicates that it was in addition to other internal company complaint resolution procedures that existed at the time. In this regard the agreement states, "Nothing contained in this Agreement shall be construed to prevent or excuse you (individually or in concert with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures."

The dispute resolution agreement allowed employees to opt out of arbitration. The agreement states, "Arbitration is not a mandatory condition of your employment at the Company, and therefore you may submit a statement notifying the Company that you wish to opt out and not be subject to this Agreement. If you want to opt out, you must notify the Company of your intention to opt out by submitting a signed and dated statement on a 'Dispute Resolution Agreement Opt Out Form' that can be obtained from and returned to the Company's Human Resources Department . . . or by submitting to Human Resources a written notice stating that you are opting out of this Agreement. In order to be effective, your opt out notice must be provided within 30 days of your receipt of this Agreement. If you timely opt[] out as provided in this paragraph, you will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should you not opt out of this Agreement within 30 days of your receipt of this Agreement, continuing your employment constitutes mutual acceptance of the terms of this Agreement by you and the Company. You have the right to consult with counsel of your choice concerning this Agreement." (Boldface & underscoring omitted.)

The dispute resolution agreement also provides for severability as follows: "In addition to as stated . . . [regarding the class action waiver], . . . in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable."

**B.** *Plaintiff's Putative Class Action Complaint*

Plaintiff filed a putative class action complaint against defendants as her "joint employers."  She alleges 10 causes of action for Labor Code and wage order violations, including failure to pay all wages owed, permit meal or rest periods, provide accurate wage statements, and indemnify for necessary expenditures.  Based on the alleged Labor Code violations, plaintiff also alleges an eleventh cause of action for violation of the unfair competition law (Bus. & Prof. Code, § 17200, et seq.).

**C.** *Defendants' Motion to Compel Arbitration, Dismiss Class Claims, and Stay Action*

Defendants filed a motion to compel arbitration of plaintiff's individual claims, dismiss the class claims, and stay the action.  The motion was based on the written "dispute resolution agreement" that defendants contended plaintiff had signed on her first day of work in December 2018.  (Capitalization omitted.)  Defendants contended that the FAA governed the parties' agreement, that the agreement covered plaintiff's employment related claims, and that the agreement was not unconscionable.  Defendants further argued that based on the class action waiver, the putative class claims should be dismissed while plaintiff's individual claims were subject to arbitration.

In support of the motion, defendants provided a declaration from the senior director of human resources operations (human resources director) of defendant Flagship Facility Services, Inc.[1]  The human resources director had been employed in various human resources positions at the company for more than 10 years.  According to the human resources director, Flagship Facility Services, Inc. provided "facilities management services, including janitorial services" to different companies throughout the United States.  Plaintiff's personnel file reflected that she was employed by Flagship Facility Services, Inc.

---

[1] The original declaration was not made under penalty of perjury.  An amended declaration signed by the human resources director under penalty of perjury was later filed by defendants.

from December 2018 to February 2023.  Flagship Facility Services, Inc. and the other three Flagship defendants were "all affiliated entities."

The human resources director stated that new employees were "presented with" defendants' policies and procedures during the "onboarding" process.  When plaintiff was hired, she was "presented with a physical copy of Flagship's new hire documents," including the dispute resolution policy.  According to the human resources director, "[d]uring onboarding, . . . [h]uman [r]esources staff discuss each policy with the new hires," including the dispute resolution agreement.  "New hires are then given as much time as they need to review the [dispute resolution agreement] and ask any questions they might have." When plaintiff was hired in 2018, new employees signed the last page of the dispute resolution agreement if they agreed with the terms.  According to the human resources director, plaintiff's personnel file contained the signed agreement "bearing [her] signature at the time of her hire."  A copy of the signed dispute resolution agreement was attached to the human resource director's declaration.  The human resources director searched but did not find any opt-out form from plaintiff.

The human resources director further stated that plaintiff was a member of a union that had entered into a collective bargaining agreement with defendant Flagship Facility Services, Inc. effective May 1, 2020 to 2024.  A copy of the collective bargaining agreement was attached to the human resource director's declaration.  The collective bargaining agreement with attached appendices was nearly 150 pages.

D. *Plaintiff's Opposition*

In opposition, plaintiff contended that she did not assent to the arbitration agreement because, among other reasons, she was a Spanish speaker who was not literate in English. She also argued that the arbitration agreement was unconscionable.  Regarding procedural unconscionability, plaintiff contended that she could not read English, was not shown the arbitration agreement, was not informed about it, and was not told she could opt out. Further, the agreement was apparently presented with other employment documents, and

6

she was not given a copy to take home to obtain assistance. Plaintiff argued that the agreement used 10.5-point font, was single-spaced, contained more than 2,300 words, used complex sentences, and had numerous statutory references along with legal jargon, all of which made the agreement "entirely incomprehensible to a layperson." She also contended the arbitration agreement was substantively unconscionable with respect to the class action waiver, the confidentiality provision, the purported authority to issue subpoenas for third party discovery, and the reference to other, unspecified internal dispute resolution procedures. Plaintiff argued that the defects in the agreement could not be cured by severance and therefore the agreement should not be enforced.

Plaintiff stated in a declaration[2] in opposition to the motion that she was a "custodial worker" employed by Flagship Facility Services, Inc. from approximately January 2019, until February 2023. Plaintiff was literate in Spanish only. She had "very little ability to read, write, speak, or understand English with the exception of a handful of words."

During the "onboarding process" for her job in 2018, a Spanish interpreter explained tax documents and "informed [plaintiff] that [she] needed to sign it." Plaintiff "was directed to sign one or more documents, which [she] believe[s] were tax documents relating to dependents." She was not given a copy of that document or any other document and was not permitted to take any document home before signing it.

The interpreter then explained "other documents relating to employment rules such as harassment and discipline," but the documents were not shown to plaintiff and she was not given a copy. Plaintiff did not recall signing any of these documents.

Plaintiff had "no recollection" of seeing the dispute resolution agreement during the onboarding process or otherwise during her employment, was not given a copy, would not have been able to read or understand the body of the document without a translation, and was not informed that she was signing or agreeing to an arbitration agreement. She also was

_____

[2] Plaintiff executed the declaration in Spanish. She also filed an English translation of the declaration by a certified interpreter.

not provided with an explanation of arbitration during the onboarding process. Plaintiff stated that although the signature on the document "bears a slight resemblance to [her] signature," she does "not believe it is [her] signature." She further stated that she was not informed she could opt out of an arbitration agreement, and that she would have opted out if she had been informed.

### E. *Defendants' Reply*

In reply, defendants contended that plaintiff's "self-serving" declaration was insufficient to create a factual dispute regarding the authenticity of her signature or the authenticity of the dispute resolution agreement. Second, her inability to read or understand the signed agreement did not prevent its enforcement. Third, the agreement was not procedurally unconscionable because it was written in "plain language," only four pages in length, and in a readable font. Further, plaintiff was given as much time as she wanted to read it, to show it to anyone, and to ask questions. Fourth, the agreement was not substantively unconscionable.

### F. *Plaintiff's Second Civil Action Against Defendants*

In the meantime, a few months after plaintiff filed the putative wage and hour class action for Labor Code violations against defendants, she filed a second civil action against defendants, alleging a single cause of action under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). In response, defendants filed a motion to compel arbitration of plaintiff's individual PAGA claim and to dismiss her representative PAGA claim. Regarding the representative PAGA claim, defendants contended that plaintiff was "exempt from PAGA" based on Labor Code section 2699.8, which provides that PAGA does not apply to janitorial employees working under a collective bargaining agreement in specified circumstances.

Plaintiff opposed the motion in the PAGA action in a single "consolidated" opposition that also addressed defendants' motion to compel arbitration in the putative class

8

action.  (Boldface & capitalization omitted.)  Plaintiff contended that defendants failed to meet their burden of showing that the PAGA exemption applied.

In reply, defendants referred to a collective bargaining agreement that applied to plaintiff.  A copy of the collective bargaining agreement was attached to the human resources director's declaration filed in the putative class action.[3]

## G. *Trial Court's Order*

A combined hearing was held on defendants' motions to compel arbitration in the putative class action and in the PAGA case.  The trial court issued a single written order denying the motion to compel arbitration, dismiss the class claims, and stay the proceedings in the putative class action, and granting the motion to dismiss the representative PAGA claim in the PAGA action.  Relevant to this appeal in the putative class action case, the court determined that the FAA applied, but that California law governed the procedure.  The court found that plaintiff had signed the dispute resolution agreement and therefore an arbitration agreement existed between the parties.

However, the trial court found the dispute resolution agreement was unconscionable and declined to enforce it.  The trial court determined that there was "a high degree of procedural unconscionability" in the circumstances of plaintiff's agreement to the contract. The court found the dispute resolution agreement to be an adhesive contract.  It was on a preprinted form and was included as a part of plaintiff's new hire paperwork.  Although the agreement contained an opt out clause, plaintiff's uncontradicted declaration established that she was not given a copy of the agreement, she was not informed about its content, she could not read the substantive provisions which were in English, and she was told that she " 'needed' " to sign other new hire paperwork.  Further, although a Spanish interpreter was present, the interpreter did not explain the agreement to plaintiff, and there was no evidence

---

[3] The record on appeal does not contain the separate record from the PAGA action. The limited information we have regarding the PAGA action is based on references to that action contained in the record on appeal for the putative class action.

9

that she was given the opportunity to review the document, request a copy, or consult with others before signing.

On these issues, the court found that the human resources director did "not provide[] sufficient facts from which the court could conclude that he has personal knowledge of the actual circumstances of [p]laintiff's onboarding. Additionally, [p]laintiff . . . provided uncontradicted evidence that she was not told she was signing an arbitration agreement." The court determined that although some of the new hire paperwork was translated, the arbitration agreement was not. "Thus, the content of the arbitration agreement was essentially hidden from [p]laintiff." The court also found that the agreement, "which contains numerous references to various laws, would be difficult to decipher by a layperson."

The trial court also determined that the dispute resolution agreement contained multiple substantively unconscionable provisions. First, the class action waiver was one-sided, applying only to employees. Second, confidentiality provisions, as in this case, usually benefit only the employer and may inhibit the plaintiff employee's ability to communicate with potential witnesses or otherwise prove the employee's case. Third, although the agreement authorizes the arbitrator to issue third party subpoenas, the FAA prohibits it and therefore the subpoena power is unavailable. Fourth, the requirement that both parties utilize existing internal dispute resolution procedures "binds" the parties "to an informal resolution procedure that [was] not described in the agreement and that [d]efendants control."

Lastly, although the agreement contained a severability clause, the trial court declined to sever the unconscionable provisions "in light of the high degree of procedural unconscionability it ha[d] found." Because the dispute resolution agreement was unenforceable, the court determined that the class action waiver contained within the agreement was also unenforceable. The court therefore denied the request to dismiss the class claims.

10

Regarding the PAGA action, the trial court dismissed plaintiff's representative PAGA claim. The court found, based on the collective bargaining agreement governing plaintiff and other undisputed evidence, that Labor Code section 2699.8 precluded her representative PAGA claim.

Defendants filed a timely notice of appeal from the order denying their motion to compel arbitration, dismiss the class claims, and stay the proceedings in the putative class action.[4]

## II. DISCUSSION

Defendants contend that the trial court erred in denying their motion to compel arbitration, dismiss the class claims, and stay the action. They argue that the FAA's procedural provisions, in addition to its substantive provisions, apply to the parties' dispute resolution agreement; that the agreement was not unconscionable; and that in any event, any problematic provisions should have been severed and the remainder of the agreement enforced. For the first time on appeal, defendants also argue that an arbitration provision contained in the collective bargaining agreement between plaintiff's union and them applies in this case and requires arbitration of plaintiff's individual claims and dismissal of the class claims.

### A. *Governing Agreement*

To determine whether the trial court erred in denying defendants' motion to compel arbitration, we must first determine the operative arbitration agreement – the December 2018 dispute resolution agreement signed by plaintiff at the outset of her employment, and/or the May 2020 collective bargaining agreement between plaintiff's union and defendants. The record reflects that defendants, in moving to compel arbitration, relied solely on the earlier December 2018 dispute resolution agreement. The trial court

---

[4] Code of Civil Procedure section 1294, subdivision (a) provides that a party may appeal from an order denying a petition to compel arbitration.

11

found that plaintiff signed this agreement, but that the agreement was unconscionable and unenforceable.

Defendants now contend for the first time on appeal that plaintiff is also bound by an arbitration provision contained in the later May 2020 collective bargaining agreement. Specifically, defendants argue that one of the appendices to the collective bargaining agreement, at page 132, contains an arbitration clause covering plaintiff's claims in this case. In response, plaintiff contends that defendants waived this issue by failing to raise it in the trial court. In reply, defendants do not dispute that they failed to argue this issue in the trial court. They contend, however, that they were not required to *argue* the issue and instead were only required to provide *evidence* of the agreement, which they accomplished by attaching a copy of the collective bargaining agreement to the human resource director's declaration. Further, defendants contend that a new theory based on undisputed facts may be raised for the first time on appeal.

We determine that defendants may not rely on the collective bargaining agreement as a basis for their contention that the trial court erred in denying their motion to compel arbitration or that plaintiff's claims must be compelled to arbitration. First, defendants' motion to compel arbitration was based solely on the dispute resolution agreement, not the collective bargaining agreement. (See *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 ["The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract"].) The record reflects that the collective bargaining agreement was the basis for defendants' contention in plaintiff's *separate* PAGA action that she could not pursue a representative PAGA claim under Labor Code section 2699.8, which provides that PAGA does not apply to janitorial employees working under a collective bargaining agreement in specified circumstances. Defendants simply did not move to compel arbitration in the trial court in the instant case based on the collective bargaining agreement.

12

Second, defendants' act of attaching a copy of the collective bargaining agreement to the human resources director's declaration, without raising or arguing in their motion papers that the issue of the collective bargaining agreement's arbitration clause required plaintiff to arbitrate her claims, was not sufficient to preserve the issue for appeal. Indeed, the cases cited by defendants themselves indicate that pursuant to Code of Civil Procedure section 1281.2, the party petitioning to compel arbitration must "alleg[e] the existence of a written agreement to arbitrate . . . ." (See *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218.) In this case, defendants never alleged or argued in the trial court that the collective bargaining agreement formed the basis for compelling plaintiff to arbitrate her claims. Further, it is well established that " '[a]ll issues . . . are subject to the rule of forfeiture, and a [party's] failure to raise the issue before the trial court will generally result in the appellate court's refusal to consider it.' [Citation.] Considering an issue for the first time on appeal is often unfair to the trial court, unjust to the opposing party, and contrary to judicial economy because it encourages the embedding of reversible error through silence in the trial court." (*In re M.H.* (2016) 1 Cal.App.5th 699, 713-714; see *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [stating that " 'issues not raised in the trial court cannot be raised for the first time on appeal' "].)

Third, we are not persuaded by defendants' contention that the issue involves a question of law on undisputed facts and no unfairness would occur in this case. According to defendants, plaintiff did not dispute in the trial court the enforceability of the collective bargaining agreement and therefore the issue of whether the agreement requires arbitration of her claims may be presented for the first time on appeal. "[A]n appellate court may allow an appellant to assert a new theory of the case on appeal where the facts were clearly put at issue at trial and are undisputed on appeal. [Citation.] However, 'if the new theory contemplates a factual situation the consequences of which are open to controversy and

13

were not put in issue or presented at trial the opposing party should not be required to defend against it on appeal. [Citations.]' [Citation.]" (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879.)

In this instance, it does not appear that the enforceability of the collective bargaining agreement's arbitration clause and whether it encompassed plaintiff's claims were raised as factual or legal matters in the trial court. Instead, the existence of the collective bargaining agreement was apparently raised in connection with the *separate* PAGA action on a *different* issue. Defendants' motion to compel arbitration in this case was based exclusively on a completely different agreement—the dispute resolution agreement. The arbitration-related provisions now cited by defendants in this court are buried in a more than 100-page collective bargaining agreement with appendices. We thus are troubled that defendants contend that plaintiff failed to contest the enforceability or applicability of the collective bargaining agreement's arbitration clause, and that the trial court "*failed* to decide . . . in the first instance" whether plaintiff should be compelled to arbitrate under the collective bargaining agreement, where defendants themselves never thought to locate and identify the relevant provisions and raise the issue in the trial court. (Italics added.)

Further, even if the existence or enforceability of the arbitration clause in the collective bargaining agreement raises only a legal issue on undisputed facts, we decline to consider this new theory on appeal as a basis for compelling arbitration of plaintiff's claims. "Merely because an issue is one of law, does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion. [Citation.]" (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275, fn. 3; *Richmond*, *supra*, at p. 879; see *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767 [explaining that an appellate court has the discretion, but is not required, to consider a new theory on appeal even if it raises a pure question of law]; *Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313, 1335 [stating that "an appellate court is under no mandatory duty to consider 'forfeited

14

arguments that raise pure questions of law' "].)[5]  Given that defendants' notice of motion and motion to compel arbitration were based solely on the arbitration clause in the dispute resolution agreement, we decline to exercise our discretion to entertain their new appellate argument.

We therefore turn to the question of whether the trial court erred in denying defendants' motion to compel arbitration based on the arbitration clause contained in the parties' dispute resolution agreement.

## B. *Whether Federal or State Procedural Provisions Apply*

On appeal, defendants contend that the procedural provisions of the FAA apply in this case, and that the trial court erred in determining in a footnote that the procedure in this case was governed by California law.

"The FAA governs agreements in contracts involving interstate commerce . . . . [Citations.]"  (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351 (*Cable Connection*).)  Section 2 of the FAA provides in part that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ."  (9 U.S.C. § 2.)  This statute, "declaring the enforceability of arbitration agreements, 'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'  [Citation.]"  (*Id.* at pp. 1350-1351.)

Generally, the FAA's procedural provisions do not apply in state court proceedings. (*Cable Connection*, *supra*, 44 Cal.4th at p. 1351.)  Instead, the procedural rules of the

_____

[5] We also note that plaintiff's complaint in the instant case alleges some claims arising at least four years prior to the filing of the complaint, that is, claims arising as early as August 2019.  The record reflects, however, that the collective bargaining agreement was not in effect until May 2020.

15

California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.) "apply by default to cases brought in California courts, including those in which the FAA governs the arbitrability of the controversy." (*Quach v. California Commerce Club, Inc*. (2024) 16 Cal.5th 562, 582 (*Quach*).) However, "the FAA's procedural rules may apply if the parties expressly agree they do or if the CAA's procedural rules are preempted. [Citations.]" (*Ibid.*)

"[W]e examine the language of the contract to determine whether the parties intended to apply the FAA to the exclusion of California procedural law . . . ." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 383.) We review this issue de novo when there is no conflicting extrinsic evidence. (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 946.)

In this case, the parties' dispute resolution agreement states that it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce." Based on this language alone, defendants contend that the parties' agreement therefore "encompass[ed] both substantive and procedural provisions of the FAA."[6]

We are not persuaded by defendants' contention. First, regarding the agreement's reference to "a transaction involving commerce," assuming this language implies the application of the FAA (see *Cable Connection*, *supra*, 44 Cal.4th at p. 1351 ["FAA governs agreements in contracts involving interstate commerce"]), generally "the CAA's procedural

[6] Defendants do not provide a record citation showing that they expressly argued in the trial court that the procedural provisions of the FAA applied in this case instead of the CAA's procedural rules. It appears defendants only generally argued in their motion to compel arbitration that the FAA "governed" or "controls" in this case. Further, although defendants in their motion cited a case with a parenthetical indicating that a contract must be examined to determine whether the parties intended to apply the FAA to the exclusion of California procedural law, their motion also cited to Code of Civil Procedure section 1281.2, which is part of the CAA. Given that defendants did not expressly argue for application of the FAA's procedural provisions and indeed cited a procedural provision of the CAA, it is not surprising that the trial court indicated that the CAA's procedural rules applied in this case.

rules apply by default to cases brought in California courts, including those in which the FAA governs the arbitrability of the controversy." (*Quach*, *supra*, 16 Cal.5th at p. 582.)

Second, in *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 (*Sanchez*), the arbitration agreement stated, "Any arbitration under this Arbitration Clause shall be *governed by* the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration." (*Id.* at p. 908, italics added.) Regarding this language, the California Supreme Court explained that "[a]lthough the arbitration agreement . . . provides that the arbitration is to be governed by the FAA and not California law, generally the California Arbitration Act governs arbitral procedures brought in California courts." (*Id.* at p. 922.) In the present case, in view of *Sanchez*, defendants fail to persuasively demonstrate that the "governed by" language in the parties' dispute resolution agreement requires the application of the FAA's procedural provisions.

Accordingly, we determine that the trial court did not err in finding that California law governed the procedure in this case.

## C. *Unconscionability*

### 1. General legal principles and standard of review

" '[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening' the FAA. [Citations.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) "Unconscionability consists of both procedural and substantive elements." (*Id.* at p. 246.) " ' "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Sanchez*, *supra*, 61 Cal.4th at p. 910, italics omitted.) "The ultimate issue in every case is

17

whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Id.* at p. 912*.*)

"In resolving a claim of unconscionability, a court's inquiry is whether the contract provision was unconscionable at the time it was made. [Citation.]" (*Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 37 (*Prima Donna Development*).) The party opposing arbitration bears the burden of proving the defense of unconscionability. (*Pinnacle*, *supra*, 55 Cal.4th at pp. 236, 247.)

"On appeal from the denial of a motion to compel arbitration, '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise "no meaningful factual disputes." [Citation.] However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." [Citation.]' " (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820-821; accord, *Ramirez v. Charter Communications, Inc*. (2024) 16 Cal.5th 478, 493 (*Ramirez*); *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 ["we must ' "accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of the credibility of witnesses and the weight of the evidence" ' "].)

We review de novo a trial court's interpretation of the law. (*Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 468.) In addition, the interpretation of a contract " 'when it is based on the words of the instrument alone' " or " 'when there is no conflict in the extrinsic evidence' " is a question of law subject to de novo review. (*Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th 807, 818-819; see *Robertson v. Health Net of California, Inc*. (2005) 132 Cal.App.4th 1419, 1425.)

## 2. Procedural unconscionability

Consistent with the Supreme Court's guidance in *Pinnacle* and *Sanchez*, we first consider whether the dispute resolution agreement is procedurally unconscionable. "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citation.]" (*Pinnacle*, *supra*, 55 Cal.4th at p. 246.) " ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." ' [Citation.]" (*Id.* at p. 247.) The procedural "element is generally established by showing the agreement is a contract of adhesion . . . .' [Citation.]" (*Ramirez*, *supra*, 16 Cal.5th at p. 492.) "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citation.] Arbitration contracts imposed as a condition of employment are typically adhesive [citations] . . . ." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126 (*OTO*).)

" 'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' [Citation.]" (*OTO*, *supra*, 8 Cal.5th at pp. 126-127.)

The California Supreme Court has "explained that there are ' "degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural

19

unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' [Citation.]" ' [Citations.] Courts 'must be "particularly attuned" to this danger in the employment setting, where "economic pressure exerted by employers on all but the most sought-after employees may be particularly acute." ' [Citations.] Thus, although adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (*Ramirez*, *supra*, 16 Cal.5th at pp. 493-494.)

On appeal, defendants contend there was no procedural unconscionability. Defendants argue that the dispute resolution agreement had an opt-out provision that specifically stated in boldface that arbitration was "not a mandatory condition" of employment. (Boldface omitted.) Defendants contend that plaintiff's inability to read English does not establish surprise for purposes of procedural unconscionability and that plaintiff had the obligation to read it or have it explained to her. Further, an interpreter was provided for her. In addition, the agreement itself instructed in Spanish that it was a contract, contained important information about her rights, that plaintiff had the sole responsibility to read and understand it, and that she could obtain assistance from an outside advisor of her choice. Defendants describe the agreement as being "only four pages long" with "easy-to-read font" and "informative headings." According to defendants, plaintiff "was under no time pressure," could have had the interpreter read the agreement "to her as many times as she wished," and could have shown the agreement to anyone, including an attorney.

We determine that substantial evidence supports the trial court's finding that the agreement as presented to plaintiff was characterized by procedural unconscionability. The evidence reflects that the dispute resolution agreement was adhesive in nature and that other facts further demonstrate oppression. The agreement was on a preprinted form, offered by an employer with greater bargaining power over an employee, and was provided during the

20

onboarding process where the circumstances indicated that the employee needed to sign the agreement to work for the employer. (See *OTO*, *supra*, 8 Cal.5th at pp. 126, 127.) On this latter point, plaintiff was told during the onboarding process that she needed to sign certain new hire paperwork, and the dispute resolution agreement was given to her to sign during this process. (See *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 472 [determining that, given the inequality and the economic power wielded by the employer, "it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement"].)

The agreement itself was four pages long and densely worded. Further, defendants knew that plaintiff could not read the dispute resolution agreement's substantive provisions in English, including the opt-out provision, given that they provided an interpreter for other documents, yet they did not provide a translation of the substantive portion of the dispute resolution agreement either by the interpreter or in the agreement itself. Instead, the few sentences of the agreement that were in Spanish informed plaintiff that it was her "sole responsibility" to read and understand it, and that she could seek independent advice about the agreement "outside the Company." Consistent with these sentences in Spanish, the company-provided interpreter did not translate the remainder of the agreement to plaintiff. Plaintiff was not permitted to take the agreement home before signing it, and she was not given a copy of the agreement after signing, which would have provided her the opportunity to seek independent consultation or translation outside of the company, and an opportunity to consider opting out of the agreement in the timeframe and manner specified in the agreement. (See *OTO*, *supra*, 8 Cal.5th at pp. 127-128 [finding oppression based on, among other factors, the employer's failure to provide a copy of the signed agreement].)

The evidence also supports the trial court's finding of surprise. As we have just explained, although an interpreter was present during the onboarding process to translate some of the new hire documents, no oral translation was provided of the dispute resolution agreement. Further, although the dispute resolution agreement contained a few sentences in

21

Spanish, none of the substantive provisions describing binding arbitration was translated. (See *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85 [finding surprise based on, among other facts, the employers' knowledge that the plaintiffs required translation to Spanish but the employers only translated part of the agreement].) Moreover, even if the document had been translated for plaintiff, the agreement is a lengthy four pages, single-spaced. It is dense, complex, and a layperson "would not have an easy journey" in trying to understand it. (*OTO*, *supra*, 8 Cal.5th at p. 128 [finding surprise based on the agreement being "a paragon of prolixity," dense, and "opaque" in substance with complex sentences "filled with statutory references and legal jargon"].) For example, the agreement states: (1) "Regardless of any other terms of this Agreement, a claim may be brought before and remedies awarded by an administrative agency if applicable law permits the agency to adjudicate the claim notwithstanding the existence of an agreement to arbitrate governed by the Federal Arbitration Act"; and (2) "This Agreement shall not be construed to require the arbitration of claims against a contractor that may not be the subject of a mandatory arbitration agreement as provided by Pub. L. 111-118 (Section 8116), Pub. L. 112-10 (Section 8102), Pub. L. 112-74 (Section 8101), Pub. L. 113-6 (Section 8097), and their implementing regulations, or any successor Department of Defense Appropriations Act addressing the arbitrability of claims."

On this record, we determine that defendants failed to meet their burden of showing that the trial court erred in finding procedural unconscionability. (See *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 211 [finding procedural unconscionability due in part to the adhesive nature of the agreement containing the arbitration clause, one party was not sufficiently fluent in English to understand the agreement, and no one explained "any of the 27 clauses in the five-page [a]greement, including the arbitration clause"].)

Defendants cite *Baltazar v. Forever 21, Inc*. (2016) 62 Cal.4th 1237 (*Baltazar*) and *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512 in support of their

22

argument that plaintiff's inability to read English "does not mean that she was 'surprised' by her agreement to arbitrate." However, neither case addresses whether an employer's presentation of a contract written in language that the employer knows the employee does not speak or read may be a factor in the procedural unconscionability analysis. In *Baltazar*, a case in which there was no language barrier, the employee actually "knew about the arbitration agreement" and "initially sought to avoid it" and hence "there was no element of surprise." (*Baltazar*, *supra*, at p. 1245.) In *Caballero*, the appellate court addressed whether a valid arbitration agreement was formed when it was written in English and the plaintiff could only read and write Spanish, not whether limited English proficiency may be a factor in the procedural unconscionability context. (*Caballero*, *supra*, at pp. 514-515, 518-519.) Moreover, *Caballero* determined that if the plaintiff had told the defendant that he could not read English, "the burden would have shifted to [the defendant] to explain the contents of the Arbitration Agreement." (*Id.* at p. 519.) In this case, defendants were aware of plaintiff's limited English proficiency, as they provided an interpreter to translate some plaintiff's new hire documents, but they did not translate the substance of the dispute resolution agreement which contained an agreement for binding arbitration.

Defendants also contend that plaintiff was given as much time as she needed to review the agreement, to ask questions, to have the interpreter read the agreement to her, and to show it to anyone, including an attorney. The basis for these factual assertions is the declaration by defendants' human resources director. However, as the trial court properly determined, the human resources director in his declaration did "not provide[] sufficient facts from which the court could conclude that he has personal knowledge of the actual circumstances of [p]laintiff's onboarding." As we have explained, the interpreter translated the content of documents other than the dispute resolution agreement, and that agreement itself notified plaintiff in Spanish that it was her "sole responsibility" to read and understand it, and that independent advice about the agreement could be obtained "outside the

23

Company." However, plaintiff was not given a copy of the agreement or the opportunity to take it home before signing.

In sum, defendants fail to meet their burden of showing error in the trial court's finding that the agreement suffered from procedural unconscionability.

### 3. Substantive unconscionability

We next consider whether specific terms in the dispute resolution agreement are substantively unconscionable. "Substantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' [Citation.]" (*OTO*, *supra*, 8 Cal.5th at pp. 129-130.)

### a. *Class Action Waiver*

The dispute resolution agreement contains a class action waiver that bars "any dispute to be brought, heard or arbitrated as a class action." The trial court acknowledged that "class action waivers are not categorically substantively unconscionable" but nevertheless concluded that the provision was unconscionable because "class action waivers are one-sided in that they only apply to the employee."

Defendants contend that the trial court erred in determining that the class action waiver was substantively unconscionable. Plaintiff contends that the court properly concluded that such waivers are substantively unconscionable.

Resolution of this issue requires a brief summary of the treatment of class action waivers by the courts. Initially, in "*Discover Bank v. Superior Court*[ (2005) 36 Cal.4th 148], [the California Supreme Court] announced a rule that class arbitration waivers in consumer contracts are unconscionable when they are found 'in a setting in which disputes

24

between the contracting parties predictably involve small amounts of damages and, when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.' [Citation.]" (*Sanchez*, *supra*, 61 Cal.4th at p. 923.)

Thereafter, the United States Supreme Court in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*) held "that the Federal Arbitration Act . . . preempts California's unconscionability rule prohibiting class waivers in consumer arbitration agreements." (*Sanchez*, *supra*, 61 Cal.4th at p. 906.) "The high court in *Concepcion* . . . held that '[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.' [Citation.] According to *Concepcion,* classwide arbitration 'sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.' [Citation.] Class arbitration also 'greatly increases risks to defendants' and 'is poorly suited to the higher stakes of class litigation' because of the lack of judicial review, 'thus rendering arbitration unattractive' to defendants. [Citation.] The court concluded that '[b]ecause it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," [citation], California's *Discover Bank* rule is preempted by the FAA.' [Citation.]" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 362 (*Iskanian*).)

"*Concepcion* did not address [another California Supreme Court opinion,] *Gentry v. Superior Court* (2007) 42 Cal.4th 443, which found certain class action waivers in employment arbitration agreements to be unenforceable . . . ." (*Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409, 1421 (*Marenco*).) However, subsequently, "[b]ased on *Concepcion*, the [California Supreme Court in *Iskanian*, *supra*, 59 Cal.4th 348] concluded that *Gentry*'s rule—that certain class action waivers in employment arbitration agreements are invalid under state law—is preempted by the FAA. [Citation.]" (*Ibid.*) Specifically, in *Iskanian*, the California Supreme Court concluded that "a state's refusal to enforce . . . a

25

[class action] waiver on grounds of public policy or unconscionability is preempted by the FAA." (*Iskanian*, *supra*, at p. 360.)

In view of *Concepcion* and *Iskanian*, the trial court in the instant case erred in determining that the class action waiver in the parties' arbitration agreement was unenforceable based on the defense of unconscionability. (See *Marenco*, *supra*, 233 Cal.App.4th at pp. 1420-1421.) In concluding otherwise, the trial court relied on *Navas v. Fresh Venture Foods, LLC* (2022) 85 Cal.App.5th 626 (*Navas*) and *Hasty v. American Automobile Assn. etc.* (2023) 98 Cal.App.5th 1041 (*Hasty*).

In *Navas*, the appellate court determined that the arbitration agreement was "primarily one-sided in favor of [the employer]" and ultimately unconscionable. (*Navas*, *supra*, 85 Cal.App.5th at p. 636; see *id.* at p. 630.) The court identified specific claims that were covered by the agreement, such as termination of employment, wage and hour violations, and discrimination claims. The court also observed that the agreement stated, " 'There will be no right or authority under this Agreement for any dispute to be brought, heard, or arbitrated as a class or collective action.' " (*Id.* at p. 636.) The court then explained, "But these are the type of claims that *only* employees bring against employers. Arbitration agreements that primarily require arbitration of the type of claims only employees bring against employers are substantively unconscionable as being 'one-sided and harsh.' [Citations.] They are unfair to employees where, for example, '[t]he mandatory arbitration requirement can only realistically be seen as applying primarily . . . to claims arising out of the termination of employment, which are virtually certain to be filed against, not by, [the employer].' [Citation.] In such cases the agreement is not neutral or mutual. [Citation.]" (*Ibid.*, italics omitted.)

Subsequently, citing *Navas*, the appellate court in *Hasty* stated, "[T]he arbitration agreement is . . . one-sided because it requires the parties to bring their claims 'in an individual capacity,' not 'in a private attorney general capacity,' and prohibits class, representative, or private attorney general proceedings. These requirements can fairly be

26

read to limit only the employee's rights. [Citation.]" (*Hasty*, *supra*, 98 Cal.App.5th at pp. 1062-1063.) The court then proceeded to discuss the fact that PAGA claims are not waivable. (*Id.* at p. 1063.) The court ultimately found the agreement unconscionable. (*Ibid*.)

The conclusion in *Navas* that the arbitration agreement was "one-sided" and "not . . . mutual" appears to have been based primarily on the types of claims for relief that were encompassed by the agreement, such as those related to termination of employment, rather than the procedural device of a class action. (*Navas*, *supra*, 85 Cal.App.5th at p. 636.) Similarly, in *Hasty*, the appellate court's conclusion that the arbitration agreement was "one-sided" likewise appears to focus on PAGA claims, rather than class claims. (*Hasty*, *supra*, 98 Cal.App.5th at p. 1062.) However, to the extent these two opinions may be understood to hold that class action waivers are one-sided and therefore unconscionable and unenforceable, we observe that neither case addressed *Concepcion* or *Iskanian* in relation to such a holding. As we find *Concepcion* and *Iskanian* relevant and binding on this court, we are compelled to conclude in the instant case that the class action waiver in the parties' dispute resolution agreement was not substantively unconscionable. (*See Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

### b. *Confidentiality*

The dispute resolution agreement includes a confidentiality provision which states, "Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties." The trial court found this provision was substantively unconscionable because confidentiality provisions usually benefit only the employer and may inhibit discovery by the plaintiff employee.

On appeal, defendants contend that the enforceability of this provision must be determined by the arbitrator and that in any event, it is not substantively unconscionable. Plaintiff argues, among other things, that the provision is one-sided in favoring the

employer, prevents a "claimant from contacting other employees to obtain helpful information and also prevent[s] other employees from building similar claims." We find no error by the trial court in finding the provision substantively unconscionable.

First, defendants contend that "the enforceability of a confidentiality clause is a 'matter distinct from the enforceability of [an] arbitration clause' and is instead a procedural issue to be decided by the arbitrator." We determine that defendants fail to meet their burden on appeal to show error in this regard. The entirety of defendants' argument on this point in the trial court and in this court consists of one sentence with two case citations. In one case cited by defendants, *Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, the appellate court did not address whether the arbitrator or the court must determine if a confidentiality provision renders an arbitration agreement substantively unconscionable. In the other case, *Kilgore v. KeyBank, N.A.* (9th Cir. 2013) 718 F.3d 1052 (*Kilgore*), the Ninth Circuit Court of Appeals determined that a confidentiality provision "preventing disclosure of any arbitration award" did not render an arbitration provision substantively unconscionable. (*Id.* at pp. 1058-1059 & fn. 9.) In a footnote, the Ninth Circuit stated that "the enforceability of the confidentiality clause is a matter distinct from the enforceability of the arbitration clause in general," and that the plaintiffs were "free to argue during arbitration that the confidentiality clause is not enforceable." (*Id.* at p. 1059, fn. 9.)

The Ninth Circuit thus did not state that only the arbitrator, not the court, may decide the issue of whether an arbitration agreement is substantively unconscionable based on a confidentiality clause, and indeed it appears the Ninth Circuit itself decided the unconscionability issue. (*Kilgore*, *supra*, 718 F.3d at pp. 1058-1059 [stating that "nothing else in the arbitration clause in the Note suggests substantive unconscionability"].) Defendants thus fail to provide persuasive legal authority establishing that the arbitrator, not the court, must decide whether the arbitration agreement is unconscionable based on the confidentiality clause.

28

Second, defendants argue on appeal that "California courts have found that confidentiality clauses are not substantively unconscionable," the confidentiality clause does not preclude plaintiff from investigating her claims or conducting discovery, and the confidentiality clause "does not require strict confidentiality and instead allows disclosure 'as may be permitted or required by law . . . .' "

Courts have observed that "although confidentiality provisions are facially neutral, they usually favor companies over individuals. [Citation.]" (*Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1254 (*Murrey*).) Indeed, certain confidentiality provisions serve "no purpose other than to benefit [the employer]." (*Id.* at p. 1255; accord, *Hasty*, *supra*, 98 Cal.App.5th at p. 1062.) At the same time, depending on the breadth of the confidentiality provision, employees are impaired from engaging in informal discovery or contacting witnesses. (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1065, 1066 (*Ramos*); see *id.* at p. 1067 [finding confidentiality provision substantively unconscionable].) Some confidentiality provisions also prevent employees from " 'tak[ing] advantage of findings in past arbitrations . . . ." (*Hasty*, *supra*, 98 Cal.App.5th at p. 1062.) For example, in employment discrimination cases, " '[f]uture employees cannot . . . prove a pattern of discrimination and/or retaliation.' " (*Ibid.*)

However, even if a confidentiality provision is for the benefit of only the employer, the provision is not necessarily unconscionable. For example, in *Baltazar*, *supra*, 62 Cal.4th 1237, the California Supreme Court determined that an arbitration agreement's confidentiality provision that expressly protected only the employer's trade secrets and other confidential information was not unduly harsh or one-sided. (*Id.* at p. 1250.) The court explained that "the basis for the extra measure of protection is a legitimate commercial need to protect [the employer's] 'valuable trade secrets and proprietary and confidential information' from public disclosure." (*Ibid.*) The court stated that a " ' "contract can provide a "margin of safety' that provides the party with superior bargaining strength a type

29

of extra protection for which it has a legitimate commercial need without being unconscionable. [Citation.]" ' " (*Ibid.*)

Some confidentiality provisions are also not absolute. For example, in *Hasty*, the arbitration agreement indicated that the confidentiality provision applied only to the " 'extent permitted by law.' " (*Hasty*, *supra*, 98 Cal.App.5th at p. 1062.) The appellate court nevertheless determined that this language did "not save" the confidentiality clause from being substantively unconscionable "because the employees would have no way of knowing what would be covered or not covered by this provision." (*Ibid.*)

In the present case, the confidentiality provision applies equally to all parties, rather than protecting only one party's information. However, the provision, which is contained in defendants' preprinted agreement, appears to benefit only the defendant employers. Defendants do not identify a " ' "legitimate commercial need" ' " for the " ' "extra protection" ' " provided by the confidentiality provision. (*Baltazar*, *supra*, 62 Cal.4th at p. 1250.) At the same time, the provision broadly prohibits disclosure of "the existence, content, or results of any arbitration . . . ." Given that the provision precludes disclosure of not only the content of the arbitration, but its very existence, we agree with the trial court and plaintiff that it inhibits her ability to investigate, communicate with, and gather evidence from current and former employees that may be helpful to prove her claims. Moreover, although the provision applies "[e]xcept as may be permitted or required by law, as determined by the Arbitrator," "employees would have no way of knowing what would be covered or not covered by this provision" (*Hasty*, *supra*, 98 Cal.App.5th at p. 1062).

However, the California Supreme Court has explained that " 'a substantive unconscionability analysis is sensitive to "the context of the rights and remedies that otherwise would have been available to the parties." [Citation.] We must examine both the features of dispute resolution adopted as well as the features eliminated.' [Citation.]" (*Ramirez*, *supra*, 16 Cal.5th at p. 506.) For example, in *Ramirez*, the court found that "[a]llowing the arbitrator to deviate from agreed-upon default discovery limits ensures that

neither party will be unfairly hampered . . . ." (*Ibid.*) The court further stated that, "[n]ormally, we assume the arbitrator will act reasonably and in conformity with the law. [Citation.]" (*Ibid.*) Consequently, if a contract is ambiguous and "susceptible to two interpretations, one which renders it valid and the other which renders it void, a court should select the interpretation that makes the contract valid," and thereby eliminate any unconscionability. (*Id.* at p. 507.)

In this case, we could assume that an arbitrator would determine that the law permits or requires plaintiff to have the ability to communicate with current and former employees about the arbitration for the purpose of gathering information that may be helpful to her case. Alternatively, we could determine, based on defendants' failure to articulate a legitimate need for the provision, that the provision is substantively unconscionable on its face and that it should be severed from the dispute resolution agreement. Under either scenario, the result would appear to be the same—defendants would not be able to enforce the confidentiality provision against plaintiff. Given that "employees would have no way of knowing what would be covered or not covered by this provision" at the outset (*Hasty*, *supra*, 98 Cal.App.5th at p. 1062), and to avoid the risk that employees might then be deterred from pursuing arbitration based on the belief that the confidentiality provision will prevent them from being able to talk to potential witnesses (see *Murray*, *supra*, 87 Cal.App.5th at p. 1255 [confidentiality provision " 'potentially discourages' " an employee from pursuing a discrimination claim]), we determine that the clause is substantively unconscionable but, as we shall later discuss, severable.

We are not persuaded by defendants' reliance on *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, and *Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, to support their argument that the confidentiality clause in this case is not substantively unconscionable. As explained by another appellate court, "neither of those opinions addressed [the] argument that a confidentiality clause like the one at issue in this case would impair [a plaintiff's] ability to

31

engage in informal discovery in pursuit of her litigation claims." (*Ramos*, *supra*, 28 Cal.App.5th at p. 1066.) For that reason, defendants' citation to a Ninth Circuit Court of Appeals opinion does not advance their argument, as the Ninth Circuit relied on these two cases and addressed a narrower confidentiality provision that did not limit the plaintiffs' ability to share information. (See *Poublon v. C.H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251, 1266, 1067 & fn. 4.)

We also find unpersuasive defendants' contention that *Murrey*, *supra*, 87 Cal.App.5th 1223, which found that a confidentiality provision added to an agreement's substantive unconscionability, is materially distinguishable. The plaintiff in *Murrey* alleged a sexual harassment claim in addition to Labor Code violations, whereas plaintiff in the instant case does not allege any harassment or discrimination claim. (See *id.* at p. 1231.) Defendants do not articulate why a confidentiality provision may be unfairly one-sided in relation to a sexual harassment claim but would nevertheless be fair when Labor Code violations or other types of claims are alleged. Further, "[i]n resolving a claim of unconscionability, a court's inquiry is whether the contract provision was unconscionable at the time it was made. [Citation.]" (*Prima Donna Development*, *supra*, 42 Cal.App.5th at p. 37; see *Ramirez*, *supra*, 16 Cal.5th at pp. 506-507 [explaining that the analysis of an unconscionability challenge to a discovery clause in an arbitration agreement should not "look[] to postcontract formation circumstances"].) Thus, we do not agree with defendants that an arbitration agreement containing a confidentiality provision cannot be substantively unconscionable unless the claims later alleged by the plaintiff involve sexual harassment.

In sum, we determine that the confidentiality clause is substantively unconscionable.

### c. *Discovery*

The dispute resolution agreement provides for discovery as follows: "In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. *At a party's request or on the*

32

*Arbitrator's own initiative, the Arbitrator may subpoena witnesses or documents for discovery purposes or for the arbitration hearing*." (Italics added.)

In the trial court, plaintiff contended in opposition to defendants' motion to compel arbitration that although this discovery provision authorized the arbitrator to issue subpoenas for discovery purposes, the FAA does not allow discovery from third parties. Further, according to plaintiff, because the dispute resolution agreement did not incorporate the relevant section of the CAA, third party discovery subpoenas were also not permitted under California law. Plaintiff contended that "the unavailability of third-party discovery unreasonably favors the employer," who has "superior knowledge of former employees who [p]laintiff cannot depose," and former employees, who are not subject to the constraints of an ongoing employment relationship, are more likely to disclose damaging information. Plaintiff argued that as a result, the discovery provision was one-sided, impeded her ability to vindicate her claims, and was substantively unconscionable.

The trial court determined that defendants in their reply brief did "not respond to this argument, thereby impliedly conceding it is meritorious." The court "[a]ccordingly" found the discovery provision substantively unconscionable.

On appeal, defendants contend that their reply brief filed in the trial court addressed the discovery provisions. Defendants further argue that "no waiver occurred because it is not a new theory, and it only pertains to questions of law on undisputed facts." On the merits, defendants contend that (1) the parties' agreement provides for third party discovery subpoenas, and (2) even without this provision the agreement could not be unconscionable because it is in accordance with the FAA.

Although defendants did not specifically address in their reply brief in the trial court the third party discovery issue that was raised by plaintiff in opposition to the motion to compel arbitration, we observe that defendants did address this specific issue at the hearing on the motion to compel. We therefore consider the substance of defendants' contention on appeal.

33

At the time the parties entered into the dispute resolution agreement, third party discovery under the CAA and FAA was limited or nonexistent. (See *Ramirez*, *supra*, 16 Cal.5th at p. 493 [stating that the unconscionability analysis " 'is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware' "]; see also *id.* at p. 506 [explaining that an "assessment of whether a discovery clause is unconscionable should focus on general factors that can be examined without relying on subsequent developments"]; *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 369-370, 393-395 (*Aixtron*) [holding that an arbitrator did not have the authority under former provisions of the CAA to issue a discovery subpoena to a third party in the circumstances of the case, and adopting the majority view of federal courts that arbitrators do not have the authority under 9 U.S.C. § 7[7] of the FAA to order a third party to produce documents in discovery]; *McConnell v. Advantest America, Inc.* (2023) 92 Cal.App.5th 596, 608-610, 612-613; *Vo v. Technology Credit Union* (2025) 108 Cal.App.5th 632, 646, fn. 6 (*Vo*) [explaining that "[e]ffective January 1, 2025, parties can now obtain third party discovery under the CAA without explicitly incorporating [Code of Civil Procedure] section 1283.05 into their arbitration agreement"].)

___

[7] Title 9 United States Code section 7 states, "The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."

However, an arbitration agreement may give the arbitrator the authority "to deviate from agreed-upon default discovery limits." (*Ramirez*, *supra*, 16 Cal.5th at p. 506 [applying California law]; see *Vo*, *supra*, 108 Cal.App.5th at pp. 646-647; *Life Receivables Trust v. Syndicate 102 at Lloyd's of London* (2d Cir. 2008) 549 F.3d 210, 218 (*Life Receivables Trust*) [applying the FAA].) In this case, the dispute resolution agreement specifically authorizes the arbitrator to "subpoena witnesses or documents for discovery purposes." The agreement also more broadly provides that "the parties will have the right to conduct adequate civil discovery" and that "any disputes in this regard shall be resolved by the Arbitrator." These provisions allow for adequate discovery, including third party discovery. (See *Ramirez*, *supra*, at p. 507 [concluding that an arbitration agreement's discovery provision would be interpreted to eliminate unconscionability by allowing the arbitrator to order additional discovery as needed, where discovery provision was "susceptible to either" a valid or an invalid interpretation]; accord *Vo*, *supra*, at p. 647 [explaining that if "a clause is ambiguous as to whether the arbitrator can order additional discovery and susceptible to an interpretation that either renders it valid or void, the court should select an interpretation that makes the contract valid"].)

We conclude that the dispute resolution agreement is not substantively unconscionable with respect to discovery. (See *Vo*, *supra*, 108 Cal.App.5th at pp. 645, 648 [determining that an arbitration agreement was not substantively unconscionable regarding discovery where it "allow[ed the] employee access to third party discovery that may be necessary to adequately arbitrate his [employment discrimination] claims"]; *Chee v. Tesla Inc.* (N.D.Cal. 2024) 732 F.Supp.3d 1056, 1065-1066 [concluding that an arbitration provision authorizing the arbitrator "to compel adequate discovery" did not limit discovery and therefore was "not substantively unconscionable"].) The trial court erred in concluding otherwise.

In sum, we determine that the trial court erred in determining that the discovery provision in the dispute resolution agreement was substantively unconscionable.

#### d. *Internal Complaint Procedure*

The dispute resolution agreement contains a nonspecific reference to other company dispute resolution procedures as follows: "Nothing contained in this Agreement shall be construed to prevent or excuse you (individually or in concert with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures." The trial court determined that this provision "binds both parties to an informal resolution procedure that is not described in the agreement and that [d]efendants control." The court concluded that this informal resolution provision was unconscionable.

On appeal, defendants contend that the internal complaint provision is not unconscionable because it applies equally to both plaintiff and defendants. Defendants also argue that the collective bargaining agreement, which plaintiff's union agreed to on her behalf, "details the existing internal grievance procedure" that applies to plaintiff.

Plaintiff contends that the provision requires her to satisfy an internal dispute resolution procedure that is controlled by defendants before filing a claim in arbitration, which gives defendants a " 'free peek' " at her case or other undue advantage. She also argues that it is not clear that the dispute resolution agreement's reference to "the Company's existing internal procedures for resolution of complaints" means the grievance policy in the collective bargaining agreement.

First, in the absence of evidence regarding what the internal complaint procedure entailed, plaintiff failed to demonstrate that the internal complaint procedure is unconscionable.[8] (See *Pinnacle, supra,* 55 Cal.4th at p. 236 [stating that the party opposing

---

[8] For the first time on appeal, defendants contend that the dispute resolution agreement was referring to a grievance procedure set forth in the collective bargaining agreement. However, the collective bargaining agreement contained in the record on appeal was not signed or in effect until well after plaintiff signed the dispute resolution agreement. Consequently, at the time plaintiff entered into the dispute resolution agreement, that agreement's reference to an "existing" company procedure for resolution of complaints

arbitration bears the burden of proving the defense of unconscionability]; *Baltazar*, *supra*, 62 Cal.4th at p. 1246 [explaining that the employer's failure to provide a copy of the American Arbitration Association's rules, which were incorporated by reference into the parties' arbitration agreement, did not bear upon the substantive unconscionability analysis where the employee did not challenge the substance of those rules].) Second, even assuming an internal complaint procedure existed, we are not persuaded that requiring an employee to utilize that procedure is unconscionable. Internal complaint procedures commonly exist for the benefit of both the employer and the employee to readily resolve workplace disputes and to avoid escalation into protracted proceedings in the judicial or arbitral forum. In sum, plaintiff failed to demonstrate that the informal resolution provision is unconscionable.

### D. *Severance*

The trial court refused to sever any provision of the dispute resolution agreement "in light of the high degree of procedural unconscionability it ha[d] found." On appeal, defendants contend that any unconscionable provision should have been severed and the remainder of the agreement enforced. Plaintiff argues that defendants fail to show an abuse of discretion by the trial court.

California legal principles regarding severance apply to contracts governed by the FAA. "The FAA seeks to treat interpretation and enforcement of arbitration agreements equally with other contracts. Such treatment continues to recognize the severance of unconscionable claims as an option for the court's consideration." (*Ramirez*, *supra*, 16 Cal.5th at p. 518.)

Under California law, "[i]f a contractual clause is found unconscionable, the court may, in its discretion [under Civil Code section 1670.5, subdivision (a)], choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results. [Citation.] The

_____

could not have been referring to the later collective bargaining agreement contained in the record on appeal.

'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.' [Citation.] Though the 'statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement,' it 'also appears to contemplate the latter course only when an agreement is "permeated" by unconscionability.' [Citation.] The trial court's decision to act as Civil Code section 1670.5 permits is reviewed for abuse of discretion. [Citation.]" (*Ramirez*, *supra*, 16 Cal.5th at p. 513.)

In determining how to exercise its discretion, a court should ask at the outset "whether 'the central purpose of the contract is tainted with illegality.' [Citation.] If so, the contract cannot be cured, and the court should refuse to enforce it. If that is not the case, the court should go on to ask first, whether the contract's unconscionability can be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary. [Citation.] If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose. [Citations.] . . . [¶] Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions. [Citation.] This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. [Citation.] If the answer to either question is yes, the court should refuse to enforce the agreement." (*Ramirez*, *supra*, 16 Cal.5th at pp. 516-517.) "In conducting this analysis, the court may also consider the deterrent effect of each option." (*Ibid*.) For example, "severing multiple unconscionable provisions from an agreement and enforcing the remainder could 'create an incentive for an employer to draft a one-sided arbitration agreement in the hope

employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place.' [Citation.]" (*Ibid.*) "Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced. [Citations.]" (*Ibid.*)

In this case, we have determined that only the provision regarding confidentiality is unconscionable. This provision is collateral to the main purpose of the agreement for binding arbitration. The confidentiality provision is contained in a single sentence, closer to the end of the multi-page dispute resolution agreement, with the qualification that the arbitrator may decide, or the parties may agree, to allow disclosure. The unconscionability of the provision can be cured through severance of the provision. In addition, the interests of justice would be furthered by such action, and the deterrent effect from severance is sufficient. Given that the provision expressly authorizes the arbitrator or all parties together to consent to disclosure, it does not appear that the provision was drafted or included with the hope that an employee would not challenge or seek relief from the provision. Lastly, the dispute resolution agreement includes a severance clause, which provides that if "any portion of the [a]greement is deemed unenforceable, the remainder of this [a]greement will be enforceable." In sum, given the nature of the sole provision regarding confidentiality that is unconscionable, we determine that all factors weigh in favor of severance of the provision and enforcement of the remainder of the dispute resolution agreement. (See *Ramirez*, *supra*, 16 Cal.5th at pp. 516-517.) We therefore conclude that the trial court abused its discretion in finding that severance was not appropriate in this case.

## E. *Dismissal of Class Claims*

The trial court, after finding that severance of multiple unconscionable provisions was not appropriate and the dispute resolution agreement was unenforceable, determined that the class action waiver contained within the agreement was also unenforceable. The

court therefore denied defendants' motion to dismiss the class claims. We have concluded that the dispute resolution agreement may be enforced after severing the single unconscionable provision regarding confidentiality. We consequently determine that defendants' motion to dismiss plaintiff's class claims should have been granted.

In sum, we determine that only the confidentiality provision is unconscionable, and that the provision should be severed from the dispute resolution agreement. As the remainder of the dispute resolution agreement is enforceable, defendants' motion to compel arbitration, dismiss the class claims, and stay the action should have been granted.

### III.   DISPOSITION

The trial court's order denying defendants' motion to compel arbitration, dismiss plaintiff's class claims, and stay the action is reversed. The matter is remanded to the trial court with directions to (1) sever the dispute resolution agreement's confidentiality provision, and (2) grant defendants' motion to compel arbitration, dismiss the class claims, and stay the action. In the interests of justice, the parties shall bear their own costs on appeal.

_____
Greenwood, P. J.


WE CONCUR:


_____
Danner, J.


_____
Bromberg, J.


H052759 Vargas Rivera v. Flagship Facility Services, Inc., et al.